IRMA CALOCA, IRMA ENID OTERO, SERAFINA COLÓN VDA. DE OTERO, demandantes y recurridas, *v.* COLEGIO DE INGENIEROS, ARQUITECTOS Y AGRIMENSORES; ASEGURADORA X, demandados y recurrentes.

*Número:* R-78-84 *Resuelto:* 14 de diciembre de 1978

166

*Miguel J. Ríos-Lugo,* abogado del Colegio de Ingenieros, Arquitectos y Agrimensores de Puerto Rico; *Plinio Pérez Marrero, Agustín Mangual Hernández* y *Osvaldo Pérez Marrero,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR MARTÍN emitió la opinión del Tribunal.

La controversia que se plantea en este caso es si un miembro del Colegio de Ingenieros, Arquitectos y Agrimensores([1]) (en adelante "el Colegio") que muere luego de comenzado el año natural sin haber satisfecho por adelantado la cuota anual de colegiación correspondiente a ese año natural queda automáticamente suspendido como miembro del referido Colegio, y por tanto sin derecho sus beneficiarios a los beneficios del seguro que provee el Colegio a sus miembros, si tales beneficiarios satisfacen el pago de la cuota adeudada.

## I

La colegiación de los ingenieros([2]) es obligatoria en Puerto Rico. Esto es, no podrá ejercerse la profesión de in-

---

([1]) Creado por la Ley Núm. 319 de 15 de mayo de 1938, según enmendada, 20 L.P.R.A. secs. 731–743.

([2]) Incluye ingeniero civil, ingeniero mecánico, ingeniero electricista, ingeniero químico, ingeniero agrónomo o cualquier otra rama de la ingeniería, arquitectura y agrimensura autorizada por la Junta Examinadora de Ingenieros, Arquitectos y Agrimensores. 20 L.P.R.A. sec. 733. En adelante nos referimos a los miembros indistintamente como colegiados o ingenieros.

geniero si no se es miembro del Colegio de Ingenieros. Para ser miembro del Colegio debe el ingeniero estar admitido a ejercer la profesión de ingeniería en Puerto Rico y cumplir con los deberes impuéstosle en la Ley. [3] Uno de esos deberes es el pago de una cuota anual, cuya cuantía, forma y fecha de pago, conforme lo dispone la Ley, queda a discreción de la asamblea anual ordinaria del Colegio mediante reglamentación al efecto. [4] Amparada en esa discreción la asamblea anual fijó la cuota anual y dispuso que "será pagada por adelantado cada año natural." [5] Para el año 1970 la cuota era de $30.00. La Ley propiamente dispone que el miembro que no pagare su cuota "quedará suspendido como tal miembro, pero podrá rehabilitarse mediante el pago de lo que adeude por aquel concepto." [6]

■ La cuestión a resolver es pues si la falta de pago de la cuota anual produce la suspensión automática del colegiado o si se requiere para ello una acción afirmativa del Colegio. Una disposición igual está contenida en la Ley que crea el Colegio de Abogados de Puerto Rico, [7] la que hemos interpretado en el sentido de que la suspensión no es automática [8] por ser de la única incumbencia del Tribunal Supremo la autoridad para suspender a un abogado del ejercicio de la profesión. [9]

El no pagar la cuota anual en la forma y manera que dispone el Reglamento es claramente una violación a éste. Esa violación debe ser traída a la atención de la Junta de Gobierno por el Tesorero del Colegio por constituir ello una falla

---

[3] *Id.* sec. 734.

[4] *Id.* sec. 739.

[5] Reglamento del Colegio de Ingenieros, etc., Cap. X, Art. 1.

[6] 20 L.P.R.A. sec. 740.

[7] Ley Núm. 43 de 14 de mayo de 1932, 4 L.P.R.A. sec. 781.

[8] Cabe señalar que no existe disposición reglamentaria alguna que prive del derecho al voto en las asambleas del Colegio a los miembros que estén atrasados en el pago de la cuota.

[9] *Colegio de Abogados de P.R.* v. *Fajardo,* 51 D.P.R. 528 (1937).

en la recaudación de los fondos que están a su cargo. ([10]) Corresponde entonces a la Junta el hacer cumplir el Reglamento, ([11]) presentando ante el Tribunal Disciplinario la correspondiente querella, ya que éste es el órgano encargado de conocer y decidir sobre las infracciones al Reglamento. ([12]) No surge que el Colegio haya puesto en movimiento el mecanismo allí provisto para sancionar al colegiado Otero Colón, envuelto en este caso, ni a colegiado otro alguno.

Abunda al argumento de que la suspensión no es automática, la práctica establecida por el Colegio desde el año 1956 (el ingeniero Otero Colón es colegiado desde 1954) de tolerar la morosidad entre los colegiados. En los quince años transcurridos entre 1956 y 1970, con excepción de los años 1964, 1965 y 1966, ([13]) menos de un 50% de los colegiados pagaron sus cuotas por adelantado. En el año en que murió el colegiado Otero Colón (1970), menos de una cuarta parte de los colegiados habían pagado la cuota por adelantado, ya que el 76.42% pagó sus cuotas luego de haber comenzado el año natural. Y, aún más, para la fecha específica de su muerte—15 de febrero—durante los años 1961 a 1970, entre 27% y 35% de los colegiados no habían pagado sus cuotas. Todavía más, el propio colegiado Otero Colón pagó tardíamente su cuota en los años 1956, 1957, 1959, 1964, 1965, 1967, 1968 y 1969 sin que haya evidencia de que hubiere sido suspendido como colegiado.

 Aunque es norma de derecho conocida que el dejar de poner en vigor una ley no puede alterar el sentido de la misma, ([14]) aquí se trata de algo más—la aplicación arbitraria del Reglamento. Es cuestión de debido proceso de ley. El

---

([10]) Reglamento, Cap. V, Art. 11(b), (e), (m).

([11]) *Id.* Art. 4.

([12]) *Id.* Cap. VIII, Art. 1.

([13]) En los tres años exceptuados los pagos tardíos de cuota fueron el 49.31%, 47.79% y 48.33% respectivamente.

([14]) Véase *Coll* v. *Picó*, 82 D.P.R. 27, 35 (1960).

curso de conducta seguido por el Colegio, desde por lo menos el año 1956, al tolerar y consentir la morosidad de los colegiados, sin que se acudiera al remedio de suspensión, todo ello con el conocimiento y beneplácito de los oficiales del Colegio, de la Junta de Gobierno y de los propios colegiados constituidos en asamblea general anual, indujeron a creer a los colegiados que la cuota pagada con demora no afectaba su derecho al ejercicio de la profesión. Tal curso de acción de parte del Colegio le impide ahora negar a la viuda e hijos del colegiado Otero Colón el beneficio puramente marginal de un seguro de vida ascendente a $5,000, por falta de pago de la cuota anual de $30.00. Si el Colegio no le negó lo más, esto es, el ejercicio de la profesión a tantos colegiados morosos por tantos años, no puede permitirse ahora que le niegue lo menos, que consiste de una ayuda económica que ni siquiera proviene de las cuotas anuales sino que se deriva de aportaciones que hacen indirectamente los clientes de todos los colegiados a un fondo denominado Fondo de Asistencia Económica, [15] cuya naturaleza explicaremos más adelante.

## II

El Colegio de Ingenieros fue creado "para proteger a sus miembros en el ejercicio de la profesión, y mediante la creación de montepíos, sistema de seguro y fondos especiales, o en cualquier otra forma, socorrer a aquellos que se retiren por inhabilidad física o avanzada edad *y a los herederos o a los beneficiarios de los que fallezcan.*" (Énfasis suplido.) En adición, la Ley impone al Colegio como uno de sus deberes y obligaciones el "determinar *medidas de protección mutua,* estrechando los lazos de amistad y compañerismo entre los miembros que la constituyen." (Énfasis suplido.) Para poder realizar su importante propósito de proteger económicamente a los colegiados, herederos y beneficiarios el Colegio creó el Fondo de Asistencia Económica.

---

[15] Reglamento, Cap. X, Art. 11(a).

Cabe señalar que para llevar a cabo los deberes y obligaciones del Colegio, y para el ejercicio de las facultades concedidas por ley, el legislador previó que las cuotas fijadas por el Colegio no serían suficientes para realizar sus objetivos. Por ello, obligó a los ingenieros, arquitectos o agrimensores, a adherir sellos adoptados por el Colegio, a todo plano, documento o certificación enviada para la aprobación de algún departamento de gobierno, y a otros trabajos de ingeniería y planos especificados, conforme al valor de la obra, documento, certificación, planos y trabajos de ingeniería, según fuere el caso; y dispuso que las cantidades recaudadas por dichos conceptos se ingresarían en los fondos del Colegio para los usos que éste determinare. [16]

El Fondo de Asistencia Económica, según señala el Reglamento, "se nutrirá de cincuenta (50) por ciento de los ingresos por concepto de venta de sellos" y de las transferencias que fueren necesarias del Fondo de Reserva. [17] Este último se nutre del quince (15) por ciento de los ingresos por sellos y sobrantes anuales de los Fondos de Asistencia Económica y de Gastos Operacionales. Ninguna parte de los dineros que ingresan en el Fondo de Asistencia Económica se deriva de las cuotas anuales, ya que éstas ingresan directamente al Fondo de Gastos Operacionales. [18] Y, aunque cabe la posibilidad de que el Fondo de Asistencia Económica pueda en algún momento recibir transferencias del Fondo de Reserva, al que ingresan además los sobrantes anuales de los Gastos Operacionales, el Fondo de Asistencia Económica a su vez nutre al Fondo de Reserva con sus sobrantes anuales.

En otras palabras, el pago de las cuotas no se utiliza para el sostenimiento del Fondo de Asistencia Económica que

---

[16] 20 L.P.R.A. sec. 741. No está planteada la validez de esta disposición de ley que autoriza los ingresos por dichos conceptos para el único beneficio de los colegiados.

[17] Reglamento, Cap. X, Art. 11(a).

[18] *Id.* Cap. X, Art. 11(b).

existe "para suministrar asistencia económica a los colegiados por mediación del sistema de seguro de vida, retiro e incapacidad así como montepíos a los familiares cercanos de colegiados fallecidos que estuviesen en situación económica precaria." No hay pues posibilidad de que la demora en el pago de la cuota redunde en perjuicio a la solvencia y seguridad del Fondo.

En vista del propósito cardinal contenido en la Ley que crea el Colegio de Ingenieros de "proteger a sus miembros en el ejercicio de la profesión y mediante la creación de montepíos, *sistema de seguro* y fondos especiales, o en cualquier otra forma socorrer a aquellos que se retiren ... *y a los herederos o a los beneficiarios de los que fallezcan*" no debe esgrimirse un tecnicismo de demora en el pago de una cuota de treinta dólares ($30.00), que no es necesaria para el sostenimiento del plan de asistencia económica y de seguro, para negarle el beneficio de cinco mil dólares ($5,000.00) a los beneficiarios de un colegiado que formó parte del Colegio de Ingenieros ininterrumpidamente desde el año 1954 en que fue cualificado para el ejercicio de la profesión, sin que el Colegio hubiere tomado medidas para suspenderle del ejercicio de la misma a pesar del pago tardío de sus cuotas en varios años. La misma línea de conducta fue observada por el Colegio por muchos años con respecto a casi la mitad de los colegiados. Considerando especialmente el hecho de que ninguna parte de las cuotas anuales ingresan al Fondo de Asistencia Económica, sino que éste se nutre de la mitad de los ingresos por venta de los sellos que exige la Ley, y en vista de los propósitos de beneficencia señalados en la Ley y el Reglamento, no debe privarse a la viuda ni a los beneficiarios del Ingeniero Otero Colón del importe del seguro a que tienen derecho todos los colegiados, lo que resultaría en una injusticia precisamente a los beneficiarios que la Ley quiere socorrer en caso de muerte de un colegiado.

## III

■ Tampoco es posible establecer analogía alguna entre el pago de la cuota anual del colegiado y la prima que se paga por una póliza de seguros. La Ley de Seguros expresamente requiere un período de gracia de un mes para el pago de las primas de seguro. La exigencia del período de gracia de la Ley de Seguros es precisamente para proteger al asegurado de la pérdida de los beneficios del seguro por una demora en el pago. De no haber dispuesto el legislador en la Ley de Seguros un período de gracia se produciría el injusto resultado a que ahora nos confrontamos en el caso de epígrafe. No habiéndose provisto un período de gracia para el pago de cuotas por los colegiados, debe regir la costumbre establecida por el propio Colegio que ha extendido el período de pago hasta por lo menos el cierre del año natural. El Reglamento del Colegio intentó requerir el pago por adelantado. Pero nunca se insistió en su cumplimiento. La equidad impide que se siga su letra para cometer una injusticia. ([19])

■ Es cierto que el certificado de seguro del Colegio de Ingenieros expresa que terminará automáticamente a las doce de la noche del día 31 de diciembre de cualquier año en el caso de que el colegiado no haya satisfecho la cuota correspondiente al siguiente año. Esta limitación en la vigencia del beneficio del seguro no tiene relación alguna con el seguro en sí, que no depende para su pago de que los colegiados aporten su cuota anual, sino que está predicada en la premisa de que el colegiado que no ha pagado su cuota por adelantado queda automáticamente suspendido como tal. Esto es, asume que la vigencia del beneficio del seguro depende de que el miembro esté al día en el pago de su cuota anual. Pero, ya hemos de-

---

([19]) El plan de seguros del Colegio de Abogados difiere del plan del Colegio de Ingenieros, pues en el caso del primero se incluye como parte de la cuota anual el seguro de vida de término que se ofrece a los colegiados bajo una póliza maestra expedida por una compañía de seguros, cuyo producto varía en proporción inversa a la edad del colegiado.

mostrado que el cese del colegiado por falta de pago de la cuota no es automático, pues ello depende de que se ponga en movimiento el procedimiento de suspensión por la violación del Reglamento consistente en la falta de pago de la cuota. [20] Y, como hemos visto, los organismos rectores del Colegio no iniciaron acción alguna, sino por el contrario toleraron los atrasos desde el año 1956, según queda evidenciado en la prueba que tuvo ante sí el tribunal de instancia. De suerte que el 25 de febrero del año natural, fecha en que los beneficiarios pagaron las cuotas adeudadas, no puede considerarse fecha tardía a la luz de la antigua práctica del Colegio, por lo que no existe justificación para negar a dichos beneficiarios el socorro y protección que la Ley y el Reglamento quisieron extenderle a la muerte de su causante.

■ No es función de este Tribunal exigir el cumplimiento estricto con el Reglamento del Colegio de Ingenieros cuando esa entidad no lo ha exigido en el pasado. El Colegio tiene el mecanismo para obligar a los colegiados a pagar sus cuotas a su debido tiempo, pero parece que ha preferido no utilizarlo. Sus propios actos le impiden plantear la defensa de demora en el pago de la cuota. La equidad y la conciencia militan en su contra.

■ *Por las razones expuestas precedentemente se confirmará la sentencia del tribunal de instancia que ordena al Colegio de Ingenieros a pagar a los beneficiarios del ingeniero fallecido el importe de la póliza, y se revocará la condena de honorarios por no haber temeridad de parte del Colegio al defenderse de una acción novel en nuestra jurisdicción.*

El Juez Asociado Señor Negrón García no intervino.

---

[20] Reglamento, Cap. VIII, Art. I.