MARÍA SANTOS BERMÚDEZ ET AL., demandantes y recurrentes, *v.* TEXACO PUERTO RICO, INC., demandada y recurrida.

*Números:* RE-88-206      *Resueltos:* 22 de febrero de 1989
RE-88-225
RE-88-257

352

*José Davison Lampón*, del *Bufete Meléndez & Davison*, abogado de la Corporación Insular de Seguros, Agustín López Sánchez h/n/c Alosan Distributors, San Juan Brokerage Co., Inc., Vegetables Products Exchange, Inc. y San Juan Produce Co., recurrentes; *Rafael Carrasquillo Martínez*, del *Bufete Vélez, Ca-*

*rrasquillo & Colón*, abogado de la Compañía de Desarrollo Comercial de Puerto Rico, recurrente; *Luis R. Mena Ramos* y *José Luis Ubarri*, del *Bufete Benjamín Acosta, Jr.*, abogados de la Alliance Assurance Company, Ltd., CNA Casualty of Puerto Rico y Puerto-Rican American Insurance Company, recurrentes; *Rafael Toro Cubergé*, abogado de María Santos Bermúdez, recurrente; *Carlos Martínez Texidor*, del *Bufete Martínez, Iguina, Fuster, Goyco & Ocasio*, abogado de Texaco Puerto Rico, Inc., recurrida.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

El 5 de marzo de 1980, aproximadamente a las 6:30 P.M., ocurrió un accidente automovilístico en la avenida principal de la Zona Portuaria en Puerto Nuevo entre un vehículo marca "Mazda", conducido por María Santos Bermúdez, y un camión tanque cargado con 5,000 galones de gasolina propiedad de Texaco Puerto Rico, Inc. (Texaco), manejado por Roberto Romero Montijo.

Luego de la colisión entre los referidos vehículos, y como consecuencia de ésta, el camión tanque se estrelló contra la pared de un almacén propiedad de la Compañía de Desarrollo Comercial de Puerto Rico. Ello ocasionó un fuego de grandes proporciones, incendiándose tanto el camión como parte sustancial del contenido del almacén. Dicho almacén estaba ocupado por Vegetables Products Exchange, Inc. en calidad de arrendataria. La gasolina se dispersó y el fuego se propagó, además, a otros almacenes cercanos pertenecientes también a la Compañía de Desarrollo Comercial de Puerto Rico. Los mismos estaban arrendados a San Juan Brokerage Co., Inc., a San Juan Produce Co. y a Agustín López Sánchez, quien hacía negocios bajo el nombre de "Alosan Distributors".

Como resultado de estos hechos, el conductor del camión, Romero Montijo, falleció posteriormente.

A raíz de tales sucesos, se presentaron ante el Tribunal Superior, Sala de San Juan, nueve (9) reclamaciones contra Texaco.(1) Dicho foro, luego de evaluar abundante prueba testifical, pericial, científica y documental —y merecerle entero crédito al testimonio del único testigo ocular— relevó a la Texaco totalmente de responsabilidad mediante Sentencia Parcial de 14 de marzo de 1988. En su dictamen, condenó a todos los demandantes a pagar solidariamente la suma de $20,000 por concepto de honorarios de abogado.(2)

Mediante trámite de mostrar causa y a solicitud de los codemandantes Corporación Insular de Seguros, Agustín López Sánchez h/n/c Alosan Distributors, San Juan Brokerage Co., Inc., Vegetables Products Exchange, Inc. San Juan Produce Co., Compañía de Desarrollo Comercial de Puerto Rico, Alliance Assurance Company, Ltd., CNA Casualty of Puerto Rico y Puerto-Rican American Insurance Company, acordamos examinar, consolidados los casos, la cuestión de imposición de los honorarios de abogado.

## II

La naturaleza y complejidad del caso de autos, el carácter peculiar de varias de sus cuestiones litigiosas, unido a las complicaciones inherentes como pleito que involucra multiplicidad de partes y reclamaciones —y la ausencia de acciones que impliquen temeridad o frivolidad— nos mueven a decretar su improcedencia.

---

(1) En tres (3) de ellas también se incluyó como demandada a la señora Santos Bermúdez.

(2) Además, les impuso el pago solidario de las costas y gastos necesarios del pleito. A tales efectos, Texaco Puerto Rico, Inc., presentó un Memorando de Costas y Gastos de 25 de marzo de 1988, en que reclamaba la suma de $225,060.45. Varias partidas de las costas fueron objetadas. La cuestión está pendiente de resolución en el tribunal de instancia.

También el pleito continuará respecto a las reclamaciones contra la señora Santos Bermúdez incoadas por varios de los recurrentes.

En su esencia, el concepto *temeridad* implica una "[a]ctitud de quien afirma hechos o se conduce sin fundamento o motivo, *con conciencia de la propia sinrazón*". (Énfasis suplido.) E.J. Couture, *Vocabulario Jurídico*, Buenos Aires, Eds. Depalma, 1976, págs. 556–557. Esa característica de "conciencia de la propia sinrazón" sirve de fundamento para un postulado fundamental de nuestro sistema de administrar justicia: no puede penalizarse a un litigante que utiliza las vías judiciales para vindicar un derecho por el simple hecho de no haber prevalecido en su acción. Así, la norma general imperante en nuestro ordenamiento procesal civil establece que la parte victoriosa siempre tiene derecho a recobrar las costas, pero los honorarios de abogado sólo proceden cuando el tribunal determina que la parte perdidosa actuó con temeridad. El interés gubernamental de mantener los tribunales abiertos al público es una característica vital recogida tanto en las reglas procesales como en nuestra jurisprudencia. En ausencia de pacto, los conceptos de "temeridad" o "frivolidad" constituyen los elementos distintivos e indispensables de la condena de honorarios de abogado.

La Regla 44.1(d) de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III) es clara. Cuando la parte ha sido temeraria o frívola, el tribunal *deberá* imponerle en su sentencia una suma razonable por concepto de honorarios de abogado. *Raoca Plumbing v. Trans World*, 114 D.P.R. 464, 468 (1983); *Montañez Cruz v. Metropolitan Cons. Corp.*, 87 D.P.R. 38, 40 (1962).

Bajo este prisma, "la acción que amerita la condena de honorarios de abogado es cualquiera que haga necesario un pleito que se pudo evitar . . . que lo prolongue innecesariamente . . . o que produzca la necesidad de que otra parte incurra en gestiones evitables". (Citas omitidas.) *Fernández v. San Juan Cement Co., Inc.*, 118 D.P.R. 713, 718–

719 (1987). El principal objetivo de esta norma es castigar a aquel litigante perdidoso que, por su terquedad, obstinación, frivolidad o insistencia —en actitud desprovista de fundamentos— obliga a la parte contraria a asumir innecesariamente las molestias, gastos e inconvenientes de un pleito. Con este mecanismo los tribunales protegen a los litigantes honestos de imposiciones, dilaciones y gastos innecesarios. R.E. Bernier, *El derecho de accesión en Puerto Rico*, Barcelona, Imp. Vda. de Daniel Cochs, 1970, pág. 31.

Al amparo de tal mecanismo hemos resuelto que no existe temeridad cuando se trata de planteamientos complejos y novedosos no resueltos en nuestra jurisdicción. *García Larrinua v. Lichtig*, 118 D.P.R. 120 (1986); *M. Quilichini Sucrs., Inc. v. Villa Inv. Corp.*, 112 D.P.R. 322, 328 (1982); *Morales Garay v. Roldán Coss*, 110 D.P.R. 701 (1981); *Caloca v. C.I.A.A.*, 108 D.P.R. 164, 173 (1978); *United Hotels of P.R. v. Willig*, 89 D.P.R. 188, 197 (1963). Tampoco existe temeridad cuando un litigante actúa a base de una apreciación errónea de una cuestión de derecho, y no hay precedentes que arrojen luz sobre la cuestión, *Cabanillas v. Gelpí*, 65 D.P.R. 945, 949 (1946), o cuando existe una discrepancia honesta en cuanto a quién pertenece el derecho aplicable a los hechos del caso. *Santaella Negrón v. Licari*, 83 D.P.R. 887, 903–904 (1961). Tampoco, bajo ciertas circunstancias procesales, hay temeridad en acciones de daños y perjuicios. Así ocurre cuando el demandado perdidoso controvierte únicamente la reclamación en cuanto a la suma solicitada en concepto de daños y la misma es exagerada. *Soto v. Lugo*, 76 D.P.R. 444, 447–448 (1954).

Por otro lado, "[a]l fijar la cuantía de honorarios de abogado, [el tribunal] tomar[á] en consideración [factores tales como: (1)] el grado de temeridad que ha existido[; (2)] la naturaleza del procedimiento[; (3)] los esfuerzos y actividad

profesional que haya tenido que desplegarse[, y (4)] la habilidad y reputación de los abogados". Bernier, *op. cit.*, pág. 33. Es decir, "[s]u cuantificación no tiene que coincidir matemáticamente con el valor real de los servicios prestados o pagados, sino con aquella suma que en consideración al grado de temeridad y demás circunstancias el tribunal concluye que representa razonablemente el valor de esos servicios". *Asociación de Condóminos v. Trelles Reyes*, 120 D.P.R. 574, 579 (1988).

### III

En su comparecencia, Texaco nos argumenta —como fundamento justificativo para la imposición de la condena de honorarios— que todos los recurrentes unieron fuerzas para sólo "inculpar[l]a . . . por la ocurrencia del accidente". Solicitud de aclaración y moción para mostrar causa de 3 de agosto de 1988, pág. 3. Señala que, en concierto y común acuerdo, presentaron toda la prueba con María Santos y que los honorarios profesionales del perito que presentaron fueron satisfechos por *todos* los demandantes. Finalmente nos indica que adelantaron una teoría común sin distinción de personas o partes, que insistieron en demandar a la persona equivocada y que la demanda era frívola. No nos persuade.

*Primeramente*, la identidad en la presentación de prueba, causa común y unión de recursos necesariamente no implica temeridad. Simplemente representa la máxima utilización de los recursos probatorios y forenses en una situación en que todos los recurrentes resultaron perjudicados por un mismo evento circunstancial: la colisión y el incendio.

*Segundo*, en lo sustantivo, no albergamos duda que desde sus inicios existió en el caso de autos una controversia fáctica real y *bona fide* en cuanto a si el accidente se debió a la negligencia total o parcial del conductor Romero Montijo, imputable a Texaco. Ello movió al foro de instancia a rechazar dos (2) solicitudes de sentencia sumaria. Una promovida por los

codemandantes y otra por la demandada Texaco. No fue hasta después de un cuidadoso estudio y análisis de la prueba testifical y documental desfilada —pericial y científica— que el tribunal eximió de toda responsabilidad a Texaco. En vista de ello, si echamos una mirada retrospectiva, no era irrazonable pensar que había una buena posibilidad de que ambos conductores —Santos Bermúdez y Romero Montijo— fueran cocausantes de los daños resultantes del accidente y, por lo tanto, *codeudores solidarios*. Latente esta posibilidad, Texaco estaba sujeta a responder por la totalidad de los daños.

*Tercero*, notamos que los codemandantes recurrentes fueron las partes·pasivas que sufrieron más daños. Frente a unos probables codeudores solidarios, no resulta irrazonable que algunos optaran por reclamar a Texaco la totalidad de sus daños. Por otro lado, cabe señalar que Texaco, aun cuando en esas instancias fue únicamente la parte demandada, tuvo disponibles los vehículos procesales de la reconvención y de la demanda contra coparte. Distinto de algunos de los perjudicados, muy bien pudo haber incoado una reclamación contra Santos Bermúdez para que le respondiera total o parcialmente. No lo hizo. No puede entonces quejarse ahora.

En resumen, en estas circunstancias no podemos condenar a los aquí recurrentes al pago de honorarios de abogado por el mero hecho de no haber prevalecido en la acción. En tal eventualidad, la Regla 44.1 de Procedimiento Civil, *supra*, sólo provee la concesión de costas. Los recurrentes no incurrieron en frivolidad o temeridad.

*Se expedirá el auto y se dictará sentencia modificatoria para eliminar la suma de $20,000 concedida por concepto de honorarios de abogado. Así modificada, será confirmada.*

El Juez Asociado Señor Hernández Denton concurre con el resultado sin opinión escrita.