# ESTADO LIBRE ASOCIADO DE PUERTO RICO
## TRIBUNAL DE APELACIONES
### PANEL VII

| OFICINA DE LA PROCURADORA DE LAS MUJERES: KRISTAL RODRÍGUEZ ROMÁN<br><br>**RECURRIDA**<br><br>v.<br><br>POINT BLANK PROTECTIVE APPAREL & UNIFORMS, LLC<br><br>**RECURRENTE** | KLRA202300432 | Revisión administrativa procedente de la Oficina de la Procuradora de las Mujeres<br><br>Caso Núm. OPM-Q-2022-08<br><br>Sobre:<br>Ley Núm. 20-2001, según enmendada; Ley 427-2000, según enmendada; Ley Núm. 9-2020, según enmendada |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

Grana Martínez, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 25 de enero de 2024.

La recurrente, Point Blank Protective Apparel Uniform, LLC, en adelante Point Blank, recurrente o patrono, solicita que revisemos una Resolución en la que la Oficina de la Procuradora de la Mujer le ordenó pagar más de $34,524.00 y $900.00 en honorarios de abogado.

La recurrida, Oficina de la Procuradora de la Mujer (OPM), presentó oposición al recurso.

Los hechos esenciales para comprender la determinación que hoy tomamos son los siguientes.

## I.

El 6 de abril de 2021, la señora Kristal Rodríguez Román, en adelante señora Rodríguez, llamó a la OPM para pedir orientación sobre sus derechos como madre lactante. A raíz de su llamada, la OPM acudió a las facilidades del patrono el 15 de abril de 2021 e inspeccionó la sala de lactancia o espacio habilitado para extracción de leche materna. La inspección confirmó que el patrono no contaba

con un espacio habilitado o sala de lactancia para la extracción de leche materna. El 21 de octubre de 2021, la OPM emitió el Informe Final de Investigación. La OPM hizo constar que, el 22 de abril de 2021 acudió nuevamente a las facilidades del patrono y encontró que convirtió el espacio en una sala de lactancia y que cumplió con los requisitos inspeccionados, reemplazó los plafones del techo y colocó una unidad nueva de aire. Véase, pág. 40 del apéndice.

Sin embargo, el 11 de marzo de 2022, la OPM advirtió por escrito a Point Blank que comenzó una investigación en su contra, porque no tenía un espacio habilitado para la lactancia o para la extracción de leche materna, conforme lo establece la Ley para Reglamentar el Periodo de Lactancia o de Extracción de Leche Materna, Ley Núm. 427-2000. La OPM informó al patrono que, advino en conocimiento de su incumplimiento a través de la Sra. Krystal Rodríguez Román, quien labora en Point Blank y es madre lactante. Según consta en la misiva, la señora Rodríguez se reincorporó a trabajar el día 15 de marzo de 2021, luego de disfrutar su periodo de maternidad. La OPM advirtió al patrono que la señora Rodríguez le informó lo siguiente. El 10 de marzo de 2021, le notificó al patrono en una llamada telefónica que era madre lactante a tiempo completo y que necesitaba un espacio para extraerse la leche. Dos semanas después de reincorporase al trabajo habló con la Sra. Ana González, Gerente General de Point Blank. La señora González le dijo que no tenían cuarto de lactancia en la planta donde ella trabajaba, pero había un lugar en la otra planta que podía usar. Sin embargo, dicho espacio no tenía ventanas seguras y era constantemente interrumpida en el proceso de extracción, debido a que los demás empleados usaban el área para comer.

Además, consta en dicha carta que, la OPM inspeccionó las facilidades el 15 de abril de 2021, informó al patrono los hallazgos y le concedió un término para corregirlos. El 22 de abril de 2021

acudió a reinspeccionar el espacio destinado para la extracción de leche y encontró que el patrono corrigió los señalamientos y que cumplía con los requisitos de ley y las políticas públicas promulgadas por la OPM. No obstante, señaló que el patrono incumplió con las Leyes Núm. 427-2000 y Núm. 9-2019, porque la Sra. Rodríguez Román estuvo privada de la sala de lactancia desde el 15 de marzo de 2021 hasta el 22 de abril de 2021. La OPM advirtió que, la Sra. Krystal R. Rodríguez Román estuvo desprovista de un espacio para extraerse la leche por veinticinco (25) días desde el 15 de marzo de 2021 y eso representa una compensación de $4,350 conforme la Ley Núm. 427-2000. A tales efectos, la OPM pidió al patrono que realizara el pago en o antes del 30 de marzo de 2022 porque, de lo contrario, acudiría al foro con jurisdicción para hacer valer los derechos de la madre lactante. Véase, págs. 8-10 del apéndice.

El 25 mayo de 2022, el patrono contestó la carta de la OPM. Su representación legal cuestionó la multa de $4,350.00, porque alegó que el patrono no privó a la señora Rodríguez de una sala de lactancia, durante el periodo señalado. Point Blank adujo que concedió el tiempo dispuesto por ley para extraerse la leche materna y que hizo uso de este. Según el patrono, de la carta de la OPM surge claramente que la señora Rodríguez Román no se quejó de que le negó el periodo de extracción de leche o de que no pudo hacer uso de este. El patrono señaló que la señora Rodríguez únicamente se quejó de que las ventanas eran inseguras y de las interrupciones en el proceso de extracción de leche. Point Blank contestó a la OPM que no tenía que compensar a la señora Rodríguez, porque el patrono solo podrá ser multado cuando le niega a la empleada el periodo para lactar o extraerse la leche. Véase, págs. 5-6 del apéndice.

El 9 de agosto de 2022, la señora Kristal Rodríguez Román presentó una querella en la Oficina de la Procuradora de la Mujer

contra su patrono Point Blank. La querellante alegó que trabajó a tiempo completo para la querellada durante el horario regular de 6:00am a 2:30pm. La señora Rodríguez Román adujo que el patrono no tenía un lugar discreto, seguro e higiénico para la extracción de leche materna cuando regresó al trabajo. Según la querellante, las condiciones del cuarto no eran aptas para poder extraerse la leche porque no tenía ventilación adecuada, el plafón estaba despegado, no tenía lavamanos, no había toallas para secar los equipos, compartía el cuarto de lactancia con el personal que almorzaba en él y que utilizaba la nevera para sus alimentos. Véase, pág. 24 del apéndice.

El 9 de septiembre de 2022, la OPM activó el procedimiento de acción inmediata y emitió una ORDEN PARA MOSTRAR CAUSA, por la cual el patrono no debía recibir las multas siguientes:

1. Diez mil dólares por incumplir con la Ley 427-2000 según enmendada conocida como Ley para Reglamentar el Período de Lactancia o de Extracción de Leche Materna.

2. Diez mil dólares por incumplir con las disposiciones de la Ley Núm. 9-2020 conocida como la Carta de Derechos de la Mujer Trabajadora.

3. Compensación establecida para la querellante en la Ley Núm. 427, *supra,* equivalente a tres veces el sueldo que devenga la empleada que se le negó el periodo para lactar o extraerse la leche materna o una cantidad no menos de tres mil dólares lo que sea mayor.

Véase, pág. 15 del apéndice.

El 6 de octubre de 2022, el patrono adujo que la querellante no alegó la ausencia de una sala de lactancia. Según el patrono, la querellante fundamentó su reclamo en la falta de un espacio con ventanas seguras y que el proceso de extracción de leche era interrumpido constantemente por empleados que utilizaban el área como comedor.

Durante la vista adjudicativa se presentaron los testimonios de la querellante, de la Investigadora de OPM y de la Directora de

Recursos Humanos de la querellada, Angela María Restrepo, y se admitió la prueba documental siguiente: (1) Carta del 11 de marzo de 2022 emitida por la OPM, (2) Orden de Mostrar Causa del 7 de septiembre de 2022, (3) Querella del 9 de agosto 2022 y documento anejado, (4) Informe Investigadora del 22 de octubre de 2021, (5) Hoja de Inspección Sala de Lactancia del 15 de abril de 2021, (6) Hoja de Inspección Sala de Lactancia del 22 de abril de 2021, (7) Hoja de Inspección Políticas Públicas del 15 y 27 de abril de 2021, (8) Hoja de Inspección Políticas Públicas del 15 y 27 de abril de 2021 y (9) cuatro fotos.

El Oficial Examinador, (en adelante Examinador o funcionario), advirtió que los hechos originaron dos procedimientos administrativos distintos. El 9 de septiembre de 2022, esa oficina activó el Procedimiento de Acción Inmediata y ordenó al patrono a mostrar causa por la cual no imponerle el pago de tres multas administrativas cada una de diez mil dólares por violar las Leyes Núm. 9-2020 conocida como la Carta de la Mujer Trabajadora, 427-2000 conocida como Ley para Reglamentar el Periodo de Lactancia o de Extracción de Leche Materna y 20-2001 conocida como Ley de la Oficina de la Procuradora de las Mujeres. Además, reclamó la compensación económica establecida en la Ley Núm. 427, *supra*, como indemnización para la querellante por la falta del espacio seguro, privado e higiénico que el patrono está obligado a proveer a las madres trabajadoras lactantes. El Examinador rechazó que la reclamación de la querellante estuviera prescrita, debido a que el patrono no presentó esa defensa durante la contestación a la querella y esperó a la vista adjudicativa. Igualmente, concluyó que la OPM interrumpió el término con la carta que envió el 11 de marzo de 2022.

El funcionario determinó los hechos siguientes. La querellante era empleada de la querellada y madre lactante. El 10 de marzo de

2021 notificó al patrono que era madre lactante. La querellante se reportó al trabajo el 15 de marzo de 2021, luego de concluir su período de maternidad. La señora Rodríguez solicitó a la Gerente General de la querellada, la señora Ana González, que le proveyera su período de lactancia conforme la Ley Núm. 427, *supra*. El período de lactancia o extracción de leche materna fue establecido del 15 de marzo de 2021 hasta el 15 de marzo de 2022. Durante ese período, el querellado concedió a la querellante el tiempo establecido en la Ley Núm. 427, *supra*. La gerente general de la querellada informó a la querellante que el patrono no tenía un cuarto de lactancia en la planta donde ella laboraba, ni un lugar que pudiera habilitar. Determinaciones de hecho 1 a 8.

El informe del Examinador también incluye los hechos a continuación. El espacio provisto para la lactancia es utilizado como comedor, para guardar los alimentos por los empleados y almacén de cajas con documentos, archivadores metálicos y otros materiales de oficina. El espacio tenía una mesa para ingerir alimentos, una silla, microondas, una nevera compartida con los empleados que guardaban sus alimentos, no tenía toma de agua, ni ningún material como toallas o químicos para higienizar el área de extracción y los equipos de lactancia. La querellante no tenía una nevera exclusiva y limpia para almacenar la leche materna extraída y se vio obligada a guardarla junto a los alimentos de los empleados. El área tenía mala ventilación, solo había un abanico que no funcionaba siempre y no existía otro mecanismo de ventilación. Determinaciones de hecho 9 a 14.

Según el Examinador quedó evidenciado que la querellante se sentía incómoda porque tenía que desnudar su torso para extraerse la leche y estaba preocupada de que alguien pudiera observarla. El patrono y la querellante acordaron un horario de lactancia que se publicó en la puerta del salón. La puerta tenía escrito: *NO PASAR,*

*Período de lactancia 9:00-10:30 am y 12:30-10:00 pm y NOTICE NO EATING OR DRINKING IN THIS AREA, AVISO PROHIBIDO CONSUMIR BEBIDAS Y ALIMENTOS EN ESTA AREA.* A pesar de esa nota, la querellante a menudo era interrumpida por los empleados que entraban a buscar sus alimentos en la nevera compartida o a calentar sus almuerzos en el microondas. La querellante encontraba frecuentemente la mesa sucia con los envases desechables de los almuerzos de otras personas que usaban el espacio para ingerir alimentos. El salón tenía el olor particular que destaca algo guardado, debido a las cajas y demás objetos que estaban almacenados. Las superficies de las cajas y los archivadores tenían una capa de polvo acumulado. Determinaciones de hecho 15-19.

Otros hechos que constan en el informe del Examinador son los siguientes. El 6 de abril de 2021, la querellante pidió a la OPM una orientación sobre sus derechos como madre lactante. El 15 de abril de 2021, la OPM inspeccionó las facilidades del patrono. La investigadora de la OPM, Nohemí Rodríguez Rosa, compareció a las facilidades de la querellada para verificar el cumplimiento de la política pública sobre los derechos de las mujeres que esa oficina fiscaliza, corroborar la existencia de una sala de lactancia o espacio habilitado para extracción de leche materna y el cumplimiento con la ley y las políticas públicas promulgadas por la OPM, para el disfrute de cualquier madre lactante, en particular de la querellante. La directora de Recursos Humanos, Angela Restrepo, recibió a la investigadora que analizó la información entregada e inspeccionó el área designada a la lactancia. La OPM verificó que el cumplimiento del patrono con las Leyes Núm. 9, *supra,* Núm. 20, *supra* y Núm. 427, *supra,* entre otras, y le informó las áreas que debía atender para cumplir con la normativa sobre el derecho a la extracción de leche materna en el área del trabajo. El organismo administrativo le concedió cinco (5) días para corregir sus señalamientos. La

inspección confirmó que el patrono no contaba con un espacio habilitado o sala de lactancia para la extracción de leche materna conforme establecen las leyes aplicables. La OPM concedió a la querellada treinta (30) días para cumplir con un plan correctivo de sala de lactancia. Determinaciones de hecho 20-28.

Igualmente constan en el Informe del Examinador, los hechos siguientes. El 16 de abril de 2021, el Sr. Wilfredo Castillo se comunicó con la investigadora en representación del patrono, para solicitar un término adicional para cumplir con los señalamientos. La investigadora denegó la solicitud, porque la decisión afectaba a tres madres lactantes. El 22 de abril de 2021, la OPM acudió nuevamente a las instalaciones del patrono y encontró que el patrono había corregido todos los señalamientos. El patrono contó con una sala de lactancia privada, segura e higiénica a partir del 22 de abril de 2021 y hasta la finalización del período de lactancia. Determinaciones de hecho 29-31.

Finalmente, constan en el informe del Oficial Examinador estos hechos. El patrono respetó en todo momento los períodos de lactancia durante la jornada laboral de la querellante que consistió en 2 períodos de 30 minutos cada uno y un total de 60 minutos. El patrono no penalizó a la querellante por el tiempo que tomaba en moverse de su lugar de trabajo al espacio designado para lactar. El tiempo en que se trasladaba al cuarto de lactancia, no era descontado de los 30 minutos otorgados para la extracción de la leche materna. Las continuas interrupciones de otros empleados obligaban a la querellante a detener la extracción, cubrirse y abrir la puerta. El 11 de mayo de 2022, la OPM envió una carta al patrono exigiéndole el pago de $4,350.00, a favor de la querellante por incumplir las leyes 427 y 9, *supra*. El 22 de mayo de 2022, el patrono contestó la carta y negó haber cometido infracción alguna. El 9 de agosto de 2022, la querellante presentó la querella de epígrafe. El 9

de septiembre de 2022, la OPM notificó al patrono la Acción Adjudicativa Inmediata y Orden para Mostrar Causa. Determinaciones de hecho 32-38.[1]

Luego de evaluar la prueba, el Examinador hizo las conclusiones siguientes. El patrono no tenía un lugar designado para la extracción de la leche materna. El lugar provisto era utilizado por otros empleados como área para ingerir alimentos, almacén de artículos y documentos de oficina. El patrono acordó con la querellada que utilizaría el espacio desde las 12:30 del mediodía. No obstante, el patrono no pudo prever razonablemente que sería interrumpida, por los empleados ingerían alimentos durante ese mismo periodo. Point Blank se conformó con colocar un letrero para prohibir el uso del espacio. La hora acordada para la extracción de leche, convertía el espacio en inadecuado, porque era el horario en que los empleados ingerían sus alimentos. El espacio tampoco era higiénico, porque estaba lleno de cajas polvorientas y plafones sucios. La mesa en ocasiones estaba sucia con rastros de alimentos y no había una superficie esterilizada para la desinfección y secado de los materiales para la extracción. Tampoco era higiénico el almacenamiento de la leche junto a los alimentos de los otros empleados, por el riesgo a una contaminación cruzada. El patrono debió reforzar los procedimientos de limpieza, debido a que el espacio era utilizado por tres madres lactantes.

El funcionario, además, concluyó lo siguiente. El espacio tenía mala ventilación, porque solo había un abanico de pedestal que tenía desperfectos. Las ventanas abiertas no era una opción, porque

---

[1] Aunque el Informe del Oficial Examinador hace referencia a 11 de mayo de 2022, como la fecha en que la Oficina de la Procuradora de la Mujer le requirió al patrono el pago a la madre lactante de la indemnización que le concede la ley, la fecha correcta de esa misiva es el 11 de marzo de 2022. Véase, pág. 8 del apéndice del recurso. Por otro lado, consta erróneamente en el informe, que el patrono contestó esa carta el 22 de mayo de 2022, no obstante, consta en el expediente que su contestación tiene fecha de 25 de mayo de 2022. Véase, pág. 5 del apéndice del recurso.

no tenían cortinas. Las madres lactantes, en ocasiones, tuvieron que usar el lugar sin ninguna ventilación. Algunas de las ventanas podían ser abiertas fácilmente con las manos porque no tenían operadores. **El espacio no cumplía con los requisitos de tranquilidad, sosiego y seguridad, por la incertidumbre que ocasionaba que la ventana no funcionara y la inseguridad de que abrieran la puerta.** La interrupción constante es una causa estrés innecesario en la madre lactante que impacta su producción de leche y la disponibilidad de alimento para su criatura. El patrono no realizó actos preparativos ante la inminente llegada de una tercera madre lactante y es sorpresivo que no tuviera el área habilitada, a pesar de la gran porción de empleadas.

El Examinador concluyó que Point Blank optó por actuar, luego de recibir la visita de la OPM. Según el funcionario, no se puede fomentar que un patrono incumpla con la ley hasta que las agencias fiscalizadoras tomen acción. Este hecho pesa más, ante el desconocido número de madres lactantes que se ven obligadas a usar espacios inadecuados, ante la falta de acción oportuna de sus patronos. Aunque el patrono intentó cumplir con la ley, no hizo lo suficiente. Sus intentos tampoco fueron fructíferos. La prueba demostró que la querellante no pudo extraerse la leche en un espacio adecuado durante 26 días entre marzo y abril de 2021. El patrono no derrotó la credibilidad de los testimonios de la querellante y de la inspectora de la OPM. Point Blank no tomó cartas en el asunto hasta abril de 2021, cuando la inspectora de la OPM le exigió que cumpliera con la ley. El 11 de mayo de 2022, la OPM le requirió por escrito que indemnizara a la querellante. No obstante, negó su incumplimiento con la ley y no quiso pagar la indemnización que corresponde a la querellante. Por consiguiente, obligó a la OPM a activar su andamiaje adjudicativo. La OPM utilizó sus recursos para otorgarle representación legal a la querellante. Durante el

proceso administrativo, la OPM le ofreció al patrono renunciar a las multas por violación a la ley, a cambio de que indemnizara a la querellante. El patrono se negó y solicitó vista administrativa. Durante la vista, el patrono no presentó prueba a su favor que refutara la evidencia en favor de la querellante.

La prueba convenció al Examinador de que el patrono fue frívolo y temerario porque no reconoció ante su empleomanía, que es casi toda del sexo femenino, que estuvo mal. Según el Examinador quedó demostrado que el espacio designado para la lactancia, durante marzo a abril de 2021, no era apto ni adecuado para esos fines. El funcionario concluyó que el patrono incurrió en temeridad al no reconocer su falta y obligar a que este sencillo asunto fuese litigado.

El Examinador calculó la cantidad que el patrono debía pagar a la querellante a base de su jornada laboral de 40 horas semanales y 8 horas diarias. El funcionario concluyó que el patrono no proveyó a la querellante un cuarto de lactancia desde su reincorporación al trabajo el 15 de marzo de 2021 hasta el 21 de abril de 2021. Según el Examinador, durante ese período el salario de la querellante era $290.00 semanales, equivalente a $58.00 diarios, por una jornada de ocho horas o veinticinco dólares ($25.00) por hora. El Examinador determinó de su testimonio, que trabajó 11 días del 15 de marzo de 2021 al 21 de marzo de 2021 y 15 días del 1 de abril al 21 de abril de 2021, para un total de 26 días. Según el funcionario, la querellante tiene derecho a recibir tres veces el sueldo que devengó por cada día que fue privada del derecho a la lactancia. El Examinador determinó que el patrono tenía que pagar a la querellante $4,524.00, por el tiempo que trabajó sin poder extraerse la leche materna en un lugar adecuado, o sea, privado e higiénico.

El Examinador recomendó:

(1) Una multa de diez mil dólares por incumplir con la Ley Núm. 427, *supra.*

(2) Una multa de diez mil dólares por incumplir con la Ley Núm. 20, *supra.*

(3) Una multa de diez mil dólares por incumplir con la Ley Núm. 9, *supra.*

(4) Una compensación de cuatro mil quinientos veinticuatro dólares para la querellante conforme lo establece la Ley Núm. 427, *supra.*

(5) Novecientos dólares de honorarios de abogado por temeridad a favor de la OPM equivalentes al 20% de la compensación de la querellante.

El 7 de octubre de 2023, la Procuradora acogió las recomendaciones del Informe de la Oficial Examinadora y dictó la resolución recurrida.

El patrono pidió reconsideración oportunamente. El 18 de julio de 2023, la OPM declaró NO HA LUGAR la reconsideración.

Inconforme, la recurrente presentó este recurso en el que alega que:

ERRÓ LA OFICINA DE LA PROCURADORA DE LAS MUJERES AL ABUSAR DE SU DISCRECIÓN VIOLENTANDO LA REGLA 4.3 DE SU PROPIO REGLAMENTO SOBRE PROCEDIMIENTOS INVESTIGATIVOS Y ADJUDICATIVOS EL CUAL DISPONE QUE SE IMPONDRÁN MULTAS ANTE INCUMPLIMIENTOS CON CUALQUIER REQUERIMIENTO DE UNA INVESTIGACIÓN, LO CUAL EN ESTE CASO NO OCURRIÓ, ADEMÁS DE QUE VIOLENTÓ LA REGLA 8.6 DEL MISMO REGLAMENTO AL TRAMITAR Y PROCESAR UNA QUERELLA CONTRA POINT BLANK CUANDO EL REGLAMENTO INSTRUYE EL ARCHIVO DE LA QUERELLA ANTE LA SUBSANACIÓN DE CUALQUIER INCUMPLIMIENTO LO CUAL POINT BLANK HIZO A TIEMPO Y A CABALIDAD.

ERRÓ LA OFICINA DE LA PROCURADORA DE LAS MUJERES AL ABUSAR DE SU DISCRECIÓN IMPONIENDO SANCIONES Y MULTAS A POINT BLANK ASCENDENTES A $34,524.00 MÁS UNA SUMA ADICIONAL DE $900.00 POR CONCEPTO DE HONORARIOS DE ABOGADO EN AUSENCIA DE DISPOSICIÓN REGLAMENTARIA ALGUNA O DIRECTRIZ ADMINISTRATIVA ALGUNA QUE LE PERMITIERA A DICHA ENTIDAD CONOCER CON ANTICIPACIÓN LA POSIBILIDAD DE LA IMPOSICIÓN DE TALES MULTAS.

ERRÓ LA OFICINA DE LA PROCURADORA DE LAS MUJERES AL ABUSAR DE SU DISCRECIÓN VIOLENTANDO LOS DERECHOS CONSTITUCIONALES DE POINT BLANK A UN DEBIDO PROCESO DE LEY PROCEDIENDO A IMPONER MULTAS EXCESIVAS Y SIN PREVIA NOTIFICACIÓN.

ERRÓ LA OFICINA DE LA PROCURADORA DE LAS MUJERES AL ABUSAR DE SU DISCRECIÓN IMPONIENDO A POINT BLANK MULTAS QUE SON CONTRARIAS A DERECHO Y FUERA DEL ALCANCE DE LO PERMITIDO EN LA LEGISLACIÓN APLICABLE.

ERRÓ LA OFICINA DE LA PROCURADORA DE LAS MUJERES AL ABUSAR DE SU DISCRECIÓN AL DESCANSAR EN LO RESUELTO EN SIACA V. BAHÍA BEACH RESORT GOLF CLUB, LLC ET ALS, 194 DPR 559 (2016), CUANDO DICHO CASO TRATA DE UNA RECLAMACIÓN EN DAÑOS Y PERJUICIOS POR VIOLACIÓN AL DERECHO CONSTITUCIONAL A LA INTIMIDAD, CONTROVERSIA INEXISTENTE EN EL CASO DE AUTOS.

ERRÓ LA OFICINA DE LA PROCURADORA DE LAS MUJERES AL ABUSAR DE SU DISCRECIÓN DETERMINANDO QUE POINT BLANK INCURRIÓ EN TEMERIDAD SIMPLEMENTE POR NO ESTAR DISPUESTA A LLEGAR A UN ACUERDO TRANSACCIONAL Y OPTAR POR SU DERECHO A PRESENTAR ARGUMENTOS Y DEFENSAS EN UN PROCEDIMIENTO ADJUDICATIVO.

## II

### Revisión Administrativa

Las determinaciones de las agencias administrativas están sujetas a la revisión judicial del Tribunal de Apelaciones. 4 LPRA sec. 24y. La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico autoriza expresamente la revisión de las decisiones, órdenes y resoluciones finales de los organismos administrativos. 3 LPRA sec. 9672.

Ahora bien, la revisión judicial de las determinaciones de hecho de las decisiones de las agencias será sostenida por el tribunal, si se basa en evidencia sustancial que obra en el expediente administrativo. 3 LPRA sec. 9675. El examen jurídico de las determinaciones administrativas se circunscribe a determinar si las agencias han actuado en forma arbitraria, caprichosa, ilegal o tan irrazonablemente que constituya un abuso de discreción. Al

evaluar, los tribunales revisores hemos de otorgar deferencia a las decisiones administrativas, pues estos organismos gubernamentales gozan de experiencia y conocimiento especializado sobre los asuntos ante su consideración, lo cual ampara sus dictámenes con una presunción de legalidad y corrección. *OEG v. Martínez Giraud,* 210 DPR 79, 88-89 (2022); *Moreno Lorenzo v. Departamento de la Familia,* 207 DPR 833, 839 (2021); *Capó Cruz v. Junta de Planificación,* 204 DPR 581, 591 (2020); *Municipio de San Juan v. CRIM,* 178 DPR 163, 175 (2010). En fin, los dictámenes de las agencias gozan de una presunción de legalidad y corrección que subsiste mientras no se produzca suficiente prueba para derrotarla. *OEG v. Martínez Giraud,* supra, pág. 88-89; *Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004); *Misión Ind. P.R. v. J.P.,* 146 DPR 64, 130 (1998).

La parte que impugna judicialmente las determinaciones de hechos de una agencia tiene el peso de demostrar que no están basadas en el expediente o que las conclusiones del foro administrativo son irrazonables. La razonabilidad es el criterio rector al momento de pasar juicio sobre la decisión de una agencia. *OEG v. Martínez Giraud,* supra, pág. 90; *Otero v. Toyota,* 163 DPR 716, 727 (2005); *González Segarra et al. v. CFSE,* 188 DPR 252, 276–278 (2013); *OCS v. Universal,* 187 DPR 164, 178–179 (2012).

La evidencia sustancial que surge de la totalidad del expediente y en la que debe estar basada la determinación administrativa, ha sido definida jurisprudencialmente como aquella que es relevante y que una mente razonable podría aceptar como adecuada para sostener una conclusión. Ahora bien, ha de quedar claro que la deferencia no implica que la evidencia sustancial este sostenida por un ligero destello de evidencia o por simples inferencias. De manera que el crisol evaluativo de las determinaciones administrativas siempre estará guiado por el

concepto de razonabilidad conforme la evaluación del expediente administrativo en su totalidad. *OEG v. Martínez Giraud*, supra, pág. 89. Amparados en la deferencia y razonabilidad, los tribunales analizarán las determinaciones de hechos de los organismos administrativos. *González Segarra et al. v. CFSE*, supra.

En cuanto a las determinaciones de derecho de las agencias, estas son revisables en todos sus aspectos. 3 LPRA 9675. La revisión se ciñe a determinar si: (1) el remedio concedido por la agencia fue el apropiado, (2) las determinaciones de hecho de la agencia están basadas en evidencia sustancial que obra en el expediente administrativo y (3) las conclusiones de derecho fueron correctas. El respeto a la resolución administrativa se sostiene hasta que no se presente evidencia suficiente para derrotar la presunción de legalidad. *OEG v. Martínez Giraud*, supra, pág. 89.

La deferencia a la interpretación que las agencias hacen sobre las leyes que le corresponde poner en vigor, cede cuando: 1) erró al aplicar la ley, 2) actuó arbitraria, irrazonable o ilegalmente o 3) lesionó derechos constitutivos fundamentales. El criterio administrativo no prevalece, cuando la interpretación estatutaria que realiza la agencia provoca un resultado incompatible o contrario al propósito para el cual se aprobó la legislación y con la política pública promovida. Es decir, la deferencia cede ante una determinación que resulte irrazonable, ilegal o que conduzca a la comisión de una injusticia. *OEG v. Martínez Giraud*, supra, pág. 90-91. Por ello, los tribunales tienen que armonizar, siempre que sea posible, todos los estatutos y reglamentos administrativos involucrados para la solución justa de la controversia, de modo que se obtenga un resultado sensato, lógico y razonable. *Moreno Lorenzo v. Departamento de la Familia*, supra, pág. 843.

**Ley de la Oficina de la Procuradora de las Mujeres, Ley Núm. 20-2001, 1 LPRA sec. 311 y sigs.**

La Ley de la Procuradora de las Mujeres, *supra,* establece a la OPM como una entidad jurídica independiente y separada de cualquier otra agencia o entidad pública. Art. 4 de la Ley Núm. 20, *supra,* 1 LPRA sec. 312. La Procuradora de las Mujeres será responsable de fiscalizar la implantación de esa política pública y de vigilar su cumplimiento. El poder conferido, la autoriza a radicar a su discreción ante los tribunales, foros administrativos e instrumentalidades y subdivisiones políticas del Estado Libre Asociado por sí o en representación de la parte interesada, las acciones que estime pertinentes para atender las violaciones a la política pública que le corresponde defender. Art. 9 de la Ley Núm. 20, *supra,* 1 LPRA sec. 317 (b), (c).

El Art. 10 de la Ley Núm. 20, *supra,* 1 LPRA sec. 318, faculta a la Procuradora de las Mujeres para:

...

(a) Atender, investigar, procesar y adjudicar querellas relacionadas con acciones y omisiones que lesionen los derechos de las mujeres, les nieguen los beneficios y las oportunidades a que tienen derecho, y afecten los programas de beneficio para las mujeres y conceder los remedios pertinentes conforme a derecho, así como ordenar acciones correctivas a cualquier persona natural o jurídica, o cualquier agencia que niegue, entorpezca, viole o perjudique los derechos y beneficios de las mujeres.

...

(c) Realizar investigaciones por su propia iniciativa o en relación con las querellas que investigue, obtener la información que sea pertinente, celebrar vistas administrativas y llevar a cabo inspecciones oculares.

...

(h) imponer y cobrar multas administrativas hasta un máximo de $10,000 por acciones u omisiones que lesionen los derechos de la mujer amparados por la Constitución y las leyes del Estado Libre Asociado de Puerto Rico, de conformidad y fijar la compensación por daños ocasionados, en los casos que así proceda.

La Procuradora establecerá los sistemas necesarios para el acceso, recibo y encausamiento de las reclamaciones y quejas que insten las mujeres, por las acciones y omisiones de las agencias gubernamentales y las entidades privadas que lesionen sus derechos constitucionales, legales y reglamentarios. Art. 11 de la Ley Núm. 20, *supra,* 1 LPRA sec. 319. Las querellas serán tramitadas conforme al reglamento que a estos efectos se apruebe. Art. 12 de la Ley Núm. 20, *supra,* 1 LPRA sec. 320.

### La Ley para Reglamentar el Periodo de Lactancia o de Extracción de Leche Materna, Ley Núm. 427-2000, 29 LPRA sec. 478 y sigs.

La Ley para Reglamentar el Periodo de Lactancia o de Extracción de Leche Materna, Ley Núm. 427 de 16 de diciembre 2000, según enmendada, 29 LPRA sec. 478 et seg., se legisló para adelantar la política pública de la lactancia como el método más idóneo de alimentación para los infantes. La intención del legislador es que no exista ningún impedimento legal, para que la madre trabajadora continue lactando a su bebé cuando regresa al trabajo. *Siaca v. Bahía Resort,* 194 DPR 559, 577-578 (2016). Esta legislación concede a las madres trabajadoras la oportunidad de tener un lugar habilitado para extraer la leche materna en su espacio de trabajo. La madre tendrá una hora dentro de cada jornada de tiempo completo, la cual se puede distribuir en dos periodos de 30 minutos o en tres periodos de 20 minutos. La ley especifica que el lugar provisto para estos fines deberá garantizar a la madre lactante privacidad, seguridad e higiene y contar con tomas de energía eléctrica y ventilación. Art. 3 de la Ley Núm. 427, *supra,* 29 LPRA sec. 478(a). El legislador dio el mandato expreso a los patronos de proveer a las madres trabajadoras lactantes un lugar habilitado para extraerse la leche materna o para lactar a sus hijos. El lugar tiene que ser privado, seguro e higiénico, porque de nada

sirve que no tenga esas características. *Siaca v. Bahía Resort,* supra, pág. 593.

El Art. 10 de la Ley Núm. 427, *supra,* 29 LPRA sec. 478 (h), provee un remedio monetario para la empleada lactante a la que el patrono le ha privado del periodo para lactar o extraerse la leche materna. Su texto es el siguiente:

> Toda madre lactante à quien su Patrono le niegue el periodo otorgado mediante este capítulo para lactar o extraerse la leche materna podrá acudir a los foros pertinentes para exigir que se le garantice su derecho. El foro con jurisdicción podrá imponer una multa al Patrono que se niegue a garantizar el derecho aquí establecido por los daños que sufra la empleada y que podrá ser igual a: (1) tres veces el sueldo que devenga la empleada por cada día que se le negó el período para lactar o extraerse la leche materna, o (2) una cantidad no menor de tres mil (3,000) dólares lo que sea mayor....

**Ley 9 - Carta de Derecho de la Mujer Trabajadora, 29 LPRA sec. 510 (l) y sigs.**

El Art. 3 de la Ley Núm. 9, *supra,* 29 LPRA sec. 510 (n), contiene los derechos de la mujer trabajadora. Los incisos j, k y l están relacionados al periodo de extracción de leche y lactancia.

> ...
>
> (j) tener acceso a un área privada, segura, higiénica con ventilación y energía eléctrica para lactar a su bebé o extracción de leche materna en un lugar habilitado a esos efectos en su taller de trabajo y dicha área no podrá coincidir con el área destinada para los servicios sanitarios, comúnmente conocidos como baños;
>
> (k) disfrutar de un periodo de lactancia o extracción de leche materna de una (1) hora por jornada de trabajo a tiempo completo. El referido periodo podrá ser distribuido en dos (2) periodos de treinta (30) minutos o tres (3) periodos de veinte (20) minutos.
>
> (l) disfrutar de un periodo de treinta (30) minutos de lactancia o extracción de leche materna por cada periodo de cuatro (4) horas consecutivas de trabajo en caso de que la jornada diaria de trabajo sea parcial y exceda de las cuatro (4) horas.

Las violaciones a la Ley Núm. 9, *supra,* constituirán causa de acción de daños y perjuicios y estarán sujetas a toda causa civil o penal que conlleve tales violaciones, según el ordenamiento jurídico vigente. Art. 7 (d) Ley Núm. 9, *supra,* 29 LPRA sec. 510q. Esta

legislación no limita los derechos adquiridos mediante cualquier otra disposición estatutaria o reglamentaria. Su contenido tiene un propósito informativo y no crea derechos sustantivos exigibles ante foros judiciales, administrativos o de cualquier otra índole adicionales a los concedidos por la legislación protectora del trabajo. Los derechos enumerados estarán sujetos a la aplicabilidad y excepciones del estatuto laboral correspondiente. Art. 7 de Ley Núm. 9, *supra,* 29 LPRA sec. 510r.

### Honorarios Por Temeridad

Los tribunales tienen el deber de imponer el pago de honorarios al abogado a cualquier parte o abogado que haya actuado de forma frívola o temeraria. El tribunal adjudicará en la sentencia la suma que entiende corresponde a esa conducta. Regla 44.1(d) de Procedimiento Civil, 32 LPRA Ap. V. Así también las agencias están facultadas para imponer honorarios por temeridad. 3 LPRA sec. 9661 (d).

El concepto de temeridad es amplio. Un litigante es temerario cuando sus actuaciones ocasionan un pleito que pudo evitarse, provoca la prolongación indebida del trámite judicial u obliga a la otra parte a incurrir en gastos innecesarios para hacer valer sus derechos. La temeridad también es la conducta asumida por un litigante perdidoso que por su terquedad, testarudez, obstinación, contumacia, empecinamiento e insistencia en una actitud desprovista de fundamentos obliga a otra parte a asumir innecesariamente las molestias, gastos e inconvenientes de un pleito. *SLG González Ramos-Figueroa Colón v. SLG Pacheco Romero-Fulana de tal,* 2022 TSPR 43; *Fernández v. San Juan Cement Co., Inc.,* 118 DPR 713, 717-719 (1987).

El tribunal tiene que calcular la cuantía de los honorarios por temeridad a base de los factores siguientes: (1) el grado de temeridad, (2) el trabajo realizado, (3) la duración y naturaleza del

litigio, (4) la cuantía involucrada y (5) el nivel profesional de los abogados. *COPR v. SPU,* 181 DPR 299, 342-343 (2011). La cantidad concedida por los honorarios de abogados no equivale necesariamente al valor de los servicios legales prestados o pagados. Dicha cantidad es la suma que el tribunal estima que representa razonablemente el valor de esos servicios, tomando en consideración el grado de temeridad y demás circunstancias del caso. *Santos Bermúdez v. Texaco PR Inc.,* 123 DPR 351, 357 (1989).

### Reglamento sobre Procedimientos Adjudicativos e Investigativos de la Oficina de la Procuradora de las Mujeres, Reglamento Núm. 8454 de 10 de marzo de 2014

El Reglamento Núm. 8454, *supra,* aplica a todo trámite investigativo, adjudicativo, correctivo o imposición de multas que se lleve a cabo por la Oficina de la Procuradora de las Mujeres. Art. 1.3. La OPM podrá iniciar una investigación bajo los poderes y facultades de las leyes y reglamentos que administra y en cualquier momento antes o después de radicada una querella de acuerdo con sus normas internas. Art. 4.1.

Según lo dispuesto en el Art. 4.3, el incumplimiento con cualquier requerimiento de una investigación de la OPM conllevará la imposición de una multa administrativa de hasta $10,000.00 por cada violación. Luego de realizada la investigación, la OPM determinará el curso de acción a seguir, que puede ser presentar una querella, desestimar la misma o referir a la reclamante a otra agencia. Art. 4.9.

Todo procedimiento adjudicativo se iniciará con la presentación de una querella, donde se expresen los hechos que motivan la reclamación. Art. 5.1. Según lo dispuesto en el Art. 7. 1, la OPM notificará a todos los querellados, por escrito, mediante correo certificado con acuse de recibo. Se expresarán los motivos de la presentación de la querella. El querellado deberá contestar en treinta días, a partir del recibo de la notificación. La notificación

consistirá en copia de la querella, un aviso escrito de cualquier vista que señale la OPM y la advertencia de que podrá anotársele la rebeldía, si no contesta a tiempo.

El Art. 8 regula el procedimiento adjudicativo de acción inmediata. Una vez recibida la querella, la OPM podrá, sin tener que celebrar una vista, emitir órdenes de mostrar causa y disponer los términos y condiciones correctivas que entienda pertinentes, de acuerdo con la evidencia a su disposición y el derecho aplicable. La parte querellada será notificada que su incumplimiento con las leyes que la OPM administra y que surge de la faz de la querella, se especificarán las disposiciones legales infligidas y se le concederán 20 días para mostrar causa por la cual no debe imponérsele una multa de hasta $10,000.00 con especificación de la cuantía de la multa. Se advertirá que, en su comparecencia por escrito, podrá acreditar que corrigió la deficiencia, solicitar un término adicional para cumplir, o una vista administrativa evidenciaria. Además, será apercibido de que su incomparecencia en ese término conllevará la imposición de la referida multa, sin más citarle ni oírle y de su derecho a solicitar revisión judicial de la multa dentro de los 30 días.

No obstante, el Art. 8.6 establece que, cuando la parte querellada notifica que subsanó el incumplimiento que dio lugar a la querella, la OPM ordenará el archivo, luego de confirmar el cumplimiento. Cuando la OPM determina que el patrono no subsanó el incumplimiento, le concederá un término para que lo haga. Si el querellado no cumple en dicho término, la OPM le impondrá la multa administrativa de la cual le apercibió.

**III**

Los errores señalados serán discutidos conjuntamente porque están íntimamente relacionados. La recurrente sostiene que la OPM violó su derecho al debido proceso de ley, porque lo multó sin previa notificación y transcurrido más de un año de la reinspección. Point

Blank aduce que la multa no procede porque actuó con celeridad y la OPM corroboró que corrigió sus señalamientos. El patrono señala que no puede ser multado porque la empleada siempre utilizó el salón de lactancia. Por otro lado, aduce que la Ley Núm. 9, *supra*, no provee para la imposición de multas, que el medio provisto es una acción de daños y perjuicios y que la querellante no hizo ese reclamo. Además, alega que la OPM erró al aplicar *Siaca v. Bahía Beach Resort Golf*, supra, porque está basado en una reclamación por daños y perjuicios, por violación a un derecho constitucional y aquí, la querellante siempre pudo usar el tiempo para extraerse la leche. Finalmente cuestiona la determinación de temeridad en su contra, por simplemente no llegar a un acuerdo transaccional.

La recurrida aduce que el cumplimiento del patrono en corregir sus señalamientos, no lo exime de compensar a la madre trabajadora lactante, por el tiempo que no tuvo a su disposición un lugar adecuado para extraerse la leche materna.

La OPM tiene razón. El patrono estaba obligado a pagar la indemnización establecida en el Art. 9 de la Ley Núm. 427, *supra*, en beneficio de la madre trabajadora lactante que ha sido privada de un lugar higiénico, privado y seguro para la extracción de leche materna. El expediente administrativo tiene evidencia sustancial más que suficiente que demuestra que durante el periodo del 15 de marzo al 22 de abril de 2021, el patrono no proveyó a la madre lactante un espacio con esas condiciones para la extracción de la leche materna. La Ley Núm. 427, *supra,* es clara. No es suficiente que el patrono provea un lugar para la lactancia y la extracción de la leche materna. La ley, además, exige que el espacio provisto cumpla con las condiciones señaladas. Así lo reconoció el Tribunal Supremo de Puerto Rico en *Siaca v. Bahía Beach Resort, supra*.

Durante la vista administrativa quedó evidenciado el incumplimiento del patrono. La querellante declaró que el área

destinada era un comedor de empleados, al que todos tenían acceso y que no cumplía con la ley porque no era seguro, privado ni limpio. Según la querellante, faltaban algunos plafones, las ventanas no eran seguras, el abanico solo funcionaba en ocasiones, no había *screens* y era interrumpida constantemente por los empleados que utilizaban el lugar como comedor. La querellante dijo que no tenía dónde almacenar la leche porque compartía la nevera con las personas que guardaban sus alimentos. Además, testificó que el lugar no era limpiado y que, a veces, encontraba cajas de comida o platos sucios en la mesa donde ponía los materiales para extraerse la leche. Véase, págs. 44 a 46 de la Transcripción. La señora Rodríguez declaró que la falta de un lugar seguro para extraerse la leche le ocasionó estrés y afectó su producción y, como consecuencia, a su bebé. Véase, pág. 49 de la Transcripción.

La querellante también declaró siguiente. El lugar provisto para la extracción estaba ocupado por unos archivos y no había toallas secantes. Véase, pág. 53 de la Transcripción. La nevera, en ocasiones, no tenía espacio para guardar la leche porque estaba llena de bebida y comida de otras personas. Véase, pág. 6 de la Transcripción. La puerta tenía seguro, pero no tenía la llave. Véase, pág. 68 de la Transcripción. Se comunicó con la OPM y la orientaron de que su patrono debía proveerle un lugar seguro y privado y que no podía ser compartido como comedor y cuarto de lactancia. Véase, pág. 50 de la Transcripción. Desde el 15 al 31 de marzo de 2021 y del 1 al 27 de abril de 2021 estuvo desprovista de una sala para la extracción de leche. Véase, págs. 58-59 de la Transcripción.

Las partes estipularon que, luego del 22 de abril, el patrono corrigió las deficiencias señaladas. Véase, pág. 79 de la Transcripción. A partir de esa fecha, el lugar ya contaba con llave, tenía libreta de registro, lavamanos portátil, ventilación mediante aire acondicionado, nevera para guardar la leche y artículos de

limpieza para desinfectar la mesa. Véase, pág. 73 de la Transcripción.

El testimonio de la investigadora de la OPM, Nohemí Rodríguez Rosa, confirmó la falta de cumplimiento con las exigencias de la ley. La testigo declaró lo siguiente. La ventana tenía una cortina que ocasionaba una situación de riesgo y peligrosidad, no había sala de lactancia, sino un espacio habilitado a esos efectos. La nevera era compartida. La participante le manifestó que no tenía problemas en cuanto al tiempo para extraerse la leche, pero a veces tenía que interrumpir el proceso, porque le tocaban la puerta para buscar los almuerzos en la nevera. Había cajas de plafones y archivos con cosas encima y no había toma de agua. Véase, pág. 96 de la Transcripción. Le recomendó al patrono que instalara un lavamanos portátil o un dispensador de agua. Véase, pág. 97 de la Transcripción. El lugar no se veía limpio y era riesgoso porque había una cortina mal puesta que se podía caer en cualquier momento. Véase, pág. 106 de la Transcripción.

La señora Nohemí Rodríguez reafirmó que no había una sala de lactancia y que era solo un espacio destinado con ese propósito. Véase, pág. 97 de la Transcripción. Según sus hallazgos, el lugar era un comedor de empleados y lo hizo constar en la hoja de inspección. Véase, pág. 112 de la Transcripción. La testigo dijo que las otras dos madres lactantes le confirmaron que era un espacio de comer y que había instrucciones de no hacerlo, pero no obedecían. Véase, págs. 113, 124-126 de la Transcripción. Igualmente se reafirmó en que encontró el área sucia y desorganizada y que hacía calor. Véase, pág. 127 de la Transcripción. Según su testimonio, el área no era un espacio habilitado porque no tenía agua, ni ventilación y estaba sucio. Fue enfática en que no se extraería la leche y ni siquiera comería en ese lugar, debido a cómo estaba. Véase, págs. 129–130 de la Transcripción. Además, dijo que, mientras entrevista a las

lactantes estaba sudando, que fue interrumpida en varias ocasiones por empleados que iban a buscar sus alimentos y que encontró alimentos en la nevera. Véase, págs. 130 y 135 de la Transcripción.

No obstante, la testigo reconoció que regresó a las facilidades del patrono el 22 de abril de 2021 y encontró que todos los hallazgos habían sido atendidos y corregidos. El patrono había provisto el acceso al agua, había un aire acondicionado nuevo, se quitó la cortina y limpió el área y se cambiaron los plafones. Véase, pág. 101 de la Transcripción.

La prueba presentada en la vista administrativa demostró que la querellante no contó con una área higiénica, privada y segura para la extracción de leche materna durante el periodo del 15 de marzo de 2021 al 22 de abril de 2021. Sin embargo, el patrono se ha negado consistentemente en cumplir su obligación de pagarle la compensación establecida en el Art. 9 de la Ley Núm. 427, *supra.*

El 11 de marzo de 2022, la OPM requirió por escrito al patrono el pago de la compensación correspondiente que la querellante tenía derecho porque se vio privada de un cuarto de extracción de leche que cumpliera con los requisitos de ley. La OPM advirtió al patrono que, de no cumplir, acudiría al foro con jurisdicción para hacer valer los derechos de la madre trabajadora lactante. El 25 de mayo de 2022, su representación legal se negó a indemnizar a la querellante, porque fue diligente en corregir los señalamientos y siempre tuvo un espacio para extraerse la leche y lo hizo. Su obstinación en no cumplir con el Art. 9 de la Ley Núm. 427, *supra,* obligó a la madre trabajadora lactante a presentar una querella el 9 de agosto de 2022, en la que reclamó su derecho a recibir la compensación establecida en ese artículo.

La OPM activó correctamente el procedimiento adjudicativo de acción inmediata establecido en el Reglamento Núm. 8454, *supra,* porque de la evidencia a su disposición, surge claramente el derecho

de la querellante a recibir la compensación reclamada. La orden de mostrar causa cumplió con todas las formalidades requeridas en el Art. 8 de ese Reglamento. El patrono fue notificado que de la querella surge su incumplimiento con la Ley Núm. 427, *supra,* la Ley Núm. 9, *supra,* y la Ley Núm. 20, *supra,* y las disposiciones específicas infringidas, se le concedió el término para mostrar causa por la cual no debía ser multado, fue advertido de que podía acreditar la corrección de la deficiencia señalada o solicitar término adicional para hacerlo o una vista evidenciaria.

El patrono no puede invocar el Art. 8.6 del Reglamento Núm. 8454, *supra.* La desestimación solo procede cuando la querellada subsana el incumplimiento con la ley que ocasionó la querella y eso no ocurrió en este caso. La querellante reclamó la compensación que le provee la ley y el patrono insiste en no pagarle. La corrección, a tiempo, de los señalamientos de la OPM, no exime al patrono de pagar la compensación a la querellante.

Point Blank optó por solicitar una vista evidenciaria. La OPM realizó la vista con todas las garantías del debido proceso de ley. La evidencia sustancial presentada en la vista confirmó el derecho de la madre trabajadora lactante a ser compensada.

Al igual que la OPM concluimos que el patrono fue temerario porque sometió a la querellante y a la Procuradora a un procedimiento adjudicativo, a pesar de que el derecho reclamado está claramente estableció en la ley. Por esa razón, confirmamos su temeridad y la cantidad establecida, en vista de que no demostró que es irrazonable.

Sin embargo, diferimos de la OPM por la cantidad de multas impuestas. Según el Art. 10 (h) de la Ley Núm. 20, su facultad de multar se limita a una multa administrativa de $10,000.00. Este faculta a la OPM para:

(h) imponer y cobrar multas administrativas hasta un máximo de $10,000 por acciones u omisiones que lesionen los derechos de la mujer...

**IV**

Por lo antes expuesto se confirma la resolución recurrida, en lo que respecta al pago de una compensación de cuatro mil quinientos veinticuatro dólares ($4,524.00) para la querellante conforme lo establece la Ley Núm. 427, *supra,* y novecientos dólares ($900.00) de honorarios de abogado por temeridad a favor de la OPM. Se modifica la imposición en multas administrativas reduciéndolas a una multa de diez mil dólares ($10,000.00).

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Pérez Ocasio emite Voto de Conformidad en parte y Disidente en parte.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| OFICINA DE LA PROCURADORA DE LAS MUJERES: KRISTAL RODRÍGUEZ ROMÁN<br><br>**RECURRIDA**<br><br>v.<br><br>POINT BLANK PROTECTIVE APPAREL & UNIFORMS, LLC<br><br>**RECURRENTE** | KLRA202300432 | Revisión administrativa procedente de la Oficina de la Procuradora de las Mujeres<br><br>Caso Núm. OPM-Q-2022-08<br><br>Sobre: Ley Núm. 20-2001, según enmendada; Ley 427-2000, según enmendada; Ley Núm. 9-2020, según enmendada |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

## VOTO DE CONFORMIDAD EN PARTE Y DISIDENTE EN PARTE DEL JUEZ PÉREZ OCASIO

Respetuosamente consigno *mi conformidad*, en parte, con el dictamen mayoritario, por entender que, en esta etapa del litigio, procede en lo que respecta al pago de una compensación de cuatro mil quinientos veinticuatro dólares ($4,524.00) para la querellante conforme lo establece la Ley Núm. 427-2000, según enmendada.

No obstante, *disiento* en la parte donde se le conceden los novecientos dólares ($900.00) de honorarios de abogado por temeridad a favor de la OPM y se modifica la imposición en multas administrativas reduciéndolas a una multa de diez mil dólares ($10,000.00), toda vez que del propio Reglamento sobre Procedimientos Investigativos y Adjudicativos de la Oficina de la Procuradora de las Mujeres (OPM),[1] (en adelante Reglamento), se desprende en el artículo 8.6 lo siguiente:

> **8.6 Cuando la parte querellada notifique que ha subsanado el incumplimiento con la ley que dio lugar a la querella, la OPM determinará si en efecto se ha cumplido con la ley, en cuyo caso se ordenara *el archivo de la querella.*** Cuando la OPM determine



---

[1]OPM, Reglamento sobre Procedimientos Investigativos y Adjudicativos de la Oficina de la Procuradora de las Mujeres, Núm. 8454, (10 de marzo de 2014).

que tales actuaciones no subsanan el incumplimiento con la ley que dio lugar a la querella, le concederá a la parte querellada un término final para que subsane. Transcurrido el referido termino sin que la parte querellada haya cumplido, se le impondrá la multa administrativa de la cual se le apercibió.

(Énfasis suplido)

Es decir, surge del propio Reglamento, que una vez el querellado, corrija el incumplimiento con la ley, la OPM determinará si en efecto cumplió, y de ser el caso, **ordenará el archivo de la querella**. De ordinario, este cumplimiento fue determinado por la propia agencia, basado en el Reglamento antes mencionado.

Así las cosas, según se desprende del *"Informe Final de Investigación"*,[2] suscrito por la señora Nohemi Rodríguez Rosa, Investigadora de Querellas de la OPM, consignó que el recurrente corrigió los defectos señalados. Incluso, del *Informe* de autos surge:



"El 22 de abril de 2021, acudimos a re-inspeccionar el espacio destinado para la extracción de leche. Encontramos que *el espacio había sido transformado en una sala de lactancia* y **cumplió con todos los requisitos inspeccionados.** Cabe señalar que los plafones del techo fueron reemplazados y colocaron una unidad nueva de aire".[3]

(Énfasis suplido)

[...]

[...]

**V. Conclusiones**

"Podemos concluir que luego de nuestra primera intervención, Point Blank *corrigió las fallas señaladas por nuestra oficina con gestiones sencillas y económicas.* Luego de re-inspeccionar, podemos concluir que existe una sala de lactancia y pudimos corroborar que **las correcciones realizadas cumplen con los requisitos de la ley y las políticas públicas promulgadas por la OPM**.[4] [...]

(Énfasis suplido).

---

[2] Recurso de Apelación, Apéndice, pág.000029
[3] *Id*. Pág. 000040.
[4] *Id*. Pág. 000041.

Es decir, la propia OPM reconoce que el defecto fue corregido, por lo que antes de proceder con una multa y honorarios por temeridad por el incumplimiento, procedería un archivo de la querella por corregir las faltas señaladas.

Por ello, respetuosamente expreso mi *conformidad en parte* y *disidencia en parte* sobre el dictamen mayoritario.

En San Juan, Puerto Rico, a 25 de enero de 2024.

**ALBERTO LUIS PÉREZ OCASIO**
Juez del Tribunal de Apelaciones