ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| DINORAH ROMÁN CINTRÓN<br><br>Apelante<br><br>V.<br><br>IKON INSURANCE, INC.<br><br>Apelada | KLAN202400231 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Número: SJ2018CV08146<br><br>Sobre: Reclamación de Salarios a través de la Ley de Procedimiento Sumario Laboral, Ley Núm. 2 de 17 de octubre de 1961, según enmendada |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortíz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente*

### SENTENCIA

En San Juan, Puerto Rico a 7 de mayo de 2024.

Comparece la parte querellante apelante, Dinorah Román Cintrón (en adelante, "señora Román Cintrón" o "Apelante") mediante recurso de *Apelación* y solicita que revisemos la *Sentencia* dictada el 7 de febrero de 2024 por el Tribunal de Primera Instancia, Sala de San Juan (en adelante, "TPI"). Mediante el referido dictamen, el TPI convirtió el procedimiento a uno ordinario por entender que los agentes viajeros están exentos de la aplicación de la Ley Núm. 180-1998 y que, están impedidos de presentar una reclamación bajo la Ley Núm. 2-1961. Además, declaró Ha Lugar la Querella y ordenó a la parte querellada apelada, IKON Insurance, Inc. (en adelante, "IKON" o "Apelado"), el pago de $4,658.09 por concepto de comisiones, más intereses legales hasta su pago final a razón de 9.5% anual.

Por los fundamentos que expondremos a continuación, se *Confirma* la *Sentencia* apelada.

**I.**

La señora Román Cintrón comenzó a laborar en IKON como "Client Manager" o agente de seguros en el 2014. Como parte de sus funciones, tenía la responsabilidad de buscar clientes que se acogieran a los beneficios de las pólizas de seguro ofrecidas por IKON.

El 25 de septiembre de 2018, la señora Román Cintrón presentó una *Querella* ante el TPI en contra de IKON sobre reclamación de salarios al amparo del procedimiento sumario que concede la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, conocida como "*Ley de Procedimiento Sumario de Reclamaciones Laborales*", (en adelante, "Ley Núm. 2-1961"), 32 LPRA sec. 3118 et seq. La apelante alegó que, a partir del 2016, IKON dejó de pagar comisiones, según lo presuntamente pactado, y reclamó la cantidad de $109,272.56 por concepto de comisiones no pagadas, más una cantidad igual por concepto de compensación adicional y el pago de costas, gastos y honorarios de abogado.

Luego de varios trámites procesales, se celebró el juicio en su fondo los días 27 y 28 de febrero de 2023; 1, 8, 9, 13 y 14 de marzo de 2023; 11 de abril de 2023 y 12 de junio de 2023. Durante el juicio, la parte apelante presentó el testimonio de la señora Román Cintrón. Por su parte, la parte apelada presentó el testimonio del señor Andrés Rodríguez Bergollo, supervisor inmediato de la apelante; del señor Félix García Barreto, presidente de IKON, y;  del señor Pío Rechani Infanzón, director de finanzas de IKON. Las partes estipularon un total de 68 documentos como prueba documental.

Concluido el desfile de prueba, se ordenó a las partes la presentación de memorandos de derecho sobre los cómputos de las comisiones y el balance adeudado, si alguno. La señora Román Cintrón presentó su *Memorando de Derecho* el 11 de julio de 2023, mientras que IKON presentó el suyo el 2 de agosto de 2023.

El 7 de febrero de 2024, el TPI emitió una *Sentencia* en la que declaró Ha Lugar la *Querella* y ordenó a IKON el pago de la suma de $4,658.09 por concepto de comisiones, más intereses legales hasta su pago final a razón del 9.5% anual. Además, convirtió el procedimiento en uno ordinario por entender que no era de aplicación la Ley Núm. 180 de 27 de julio de 1998, según enmendada, conocida como "*Ley de Vacaciones y Licencia por Enfermedad de Puerto Rico*" (en adelante, "Ley Núm. 180-1998"), 32 LPRA sec. 250 et. seq., y, por ende, tampoco la Ley Núm. 2-1961, *supra.* El foro apelado realizó un total de 60 determinaciones de hechos. En lo aquí pertinente, realizó las siguientes:

[…]

5. Dinorah Román es vendedora de pólizas de seguro.

[…]

10. Entre las negociaciones la señora Román, solicitó flexibilidad en cuanto a la asistencia a la oficina porque ella vivía lejos, prefería trabajar independiente sin tener que ir a la oficina.

[…]

15. El puesto de Dinorah Román, en IKON es uno único y se estableció con el propósito de que esta trajera negocio nuevo a la empresa.

16. Dinorah Román, es la única empleada en IKON que cobra comisión por renovación de segundo y tercer año.

17. Dinorah Román, negoció y acordó con IKON un acuerdo de paga variable con términos y condiciones que son distintos al resto de los empleados de IKON debido a los objetivos de su puesto.

[…]

21. Su función primordial es realizar ventas.

22. Dinorah Román, realiza su trabajo habitual y regularmente fuera del lugar de negocio de IKON.

23. Dinorah Román, no poncha en su horario de entrada y salida.

24. Dinorah Román, no tiene horario fijo de trabajo.

25. Dinorah Román, no tiene horario específico para la toma de alimentos.

26. Debido a que Dinorah Román, realiza sus funciones como vendedora habitual y regularmente fuera del negocio de IKON, esta recibe el beneficio de un pago de "car allowance" por la suma de $500.00 mensuales, se le pagan $100 mensuales por celular y se le proveyó una laptop. [...]

En lo aquí pertinente, el foro apelado concluyó que la forma en que la señora Román Cintrón realizaba sus funciones concordaba con la definición de "Agentes Viajeros" y "Vendedores Ambulantes" establecida en el Reglamento Núm. 13 del Departamento del Trabajo y Recursos Humanos, Reglamento 7082 de 18 de enero de 2006 (en adelante, "Reglamento 7082"). Así, pues, determinó que la señora Román Cintrón estaba excluida de la aplicación de la Ley Núm. 180-1998, *supra.* Por tanto, dictaminó que no le aplicaban las disposiciones de la referida Ley ni las disposiciones de la Ley Núm. 2-1961, *supra.*

El 13 de febrero de 2024, la señora Román Cintrón presentó un *Memorando de Costas* y solicitó una suma por la cantidad de $1,208.09. En respuesta, el 14 de febrero de 2024, IKON presentó una *Impugnación de partidas reclamadas por la querellante/demandante en el Memorando de Costas* e impugnó la cuantía reclamada por la apelante bajo el fundamento de que los gastos reclamados deben haber sido necesarios para la tramitación del pleito, conforme surge de la Regla 44.1 (a) de Procedimiento Civil, 32 LPRA Ap. V., R. 44.1 (a). Así las cosas, el 15 de febrero de 2024, el TPI emitió una *Resolución* y le ordenó al apelado el pago total de $50.00 por concepto de costas, $45.00 por el diligenciamiento de los emplazamientos y $5.00 por el costo de la juramentación del emplazamiento.

Inconforme, el 8 de marzo de 2024, la señora Román Cintrón presentó un recurso de *Apelación* y solicitó la revisión de la *Sentencia* del 7 de febrero de 2024. La apelante realizó los siguientes señalamientos de error:

**Erró el Tribunal de Primera Instancia al determinar que la Demandante, como agente de ventas, no tiene derecho a las protecciones que establece la Ley Núm. 180-1998.**

**Erró el Tribunal de Primera Instancia al determinar que la Demandante no tiene derecho a la doble penalidad que establece el Artículo 11 de la Ley Núm. 180-1998.**

**Erró el Tribunal de Primera Instancia al determinar que la Demandante no tiene derecho al pago de honorarios de abogado.**

**Erró el Tribunal de Primera Instancia al no encontrar incurso en temeridad a la parte querellada y no imponer el pago de honorarios por temeridad.**

La parte apelada presentó su oposición al recurso el 8 de abril de 2024. Además, IKON solicitó la desestimación del recurso de *Apelación* porque los procedimientos fueron celebrados al amparo del procedimiento sumario que provee la Ley Núm. 2-1961, y, por ende, el recurso fue presentado fuera del término de diez (10) días que concede la Sección 4 de la Ley, 32 LPRA sec. 3121.

Perfeccionado el recurso y examinados los documentos que obran en autos, estamos en posición de resolver.

## II.

### -A-

La Ley Núm. 2-1961, *supra*, provee un procedimiento sumario para la tramitación y adjudicación de pleitos laborales. La esencia del trámite sumario creado por la Ley Núm. 2-1961, *supra*, es proveer un mecanismo judicial para que se consideren y adjudiquen querellas de obreros o empleados de manera rápida, principalmente en casos de reclamaciones salariales y beneficios. *Bacardí Corporation v. Torres Arroyo*, 202 DPR 1014, 1019 (2019) *Medina Nazario v. McNeil Healthcare LLC*, supra, pág. 732. Con su adopción, el legislador pretendió brindarle a los obreros y empleados un mecanismo procesal judicial capaz de lograr la rápida consideración y adjudicación de las querellas que éstos presenten contra sus patronos. *Vizcarrondo Morales v. MVM, Inc.*, 174 DPR 921, 928 (2008); *Rivera v. Insular Wire Products Corp.*, 140 DPR 912, 923 (1996).

La naturaleza de este tipo de reclamación exige celeridad en su tramitación, pues de esta forma se adelanta la política pública de proteger al obrero y desalentar el despido injustificado. *Izagas Santos v. Family*

*Drug Center*, 182 DPR 463, 480 (2011). Con el fin de adelantar su propósito, la ley estableció:

> [...] (1) términos cortos para la contestación de la querella presentada por el obrero o empleado; (2) criterios para la concesión de una sola prórroga para contestar la querella; (3) un mecanismo para el emplazamiento del patrono querellado; (4) el procedimiento para presentar defensas y objeciones; (5) criterios para la aplicación de las Reglas de Procedimiento Civil; (6) una limitación específica sobre el uso de los mecanismos de descubrimiento de prueba; (7) una prohibición específica de demandas o reconvenciones contra el obrero o empleado querellante; (8) la facultad del tribunal para dictar sentencia en rebeldía cuando el patrono querellado no cumpla con los términos provistos para contestar la querella, y (9) los mecanismos para la revisión y ejecución de las sentencias y el embargo preventivo. *Rivera v. Insular Wire Products Corp.*, supra, págs. 923-924. *Patiño Chirino v. Parador Villa Antonio*, 196 DPR 439, 446 (2016).

Reiteradamente nuestro más Alto Foro ha expresado que *[l]a esencia y médula del trámite fijado para casos sobre reclamaciones de salarios consagrado en la Ley Núm. 2 [...] constituye el procesamiento sumario y su rápida disposición. Desprovisto de esta característica, resulta un procedimiento ordinario más [...].* (Citas omitidas). *Rodríguez et al. v. Rivera et al.*, 155 DPR 838, 856 (2001). Es por ello que, la Ley de Procedimiento Sumario de Reclamaciones Laborales introdujo a nuestro ordenamiento jurídico un trámite especial y expedito para atender las querellas relacionadas con disputas laborales presentadas por empleados o empleadas, u obreros u obreras en contra de sus patronos. En estos casos se aplicarán las Reglas de Procedimiento Civil en todo aquello que no esté en conflicto con las disposiciones específicas de las mismas o con el carácter sumario del procedimiento establecido por esta ley. *Díaz Santiago v. Pontificia Universidad Católica de Puerto Rico*, 207 DPR 339, (2021). (Escolios omitidos).

Como podrá observarse, el procedimiento sumario creado por la Ley Núm. 2-1961, *supra,* es uno abarcador que al hacer un balance de los intereses envueltos impone la carga procesal más onerosa al patrono, sin que esto signifique que éste queda privado de defender sus derechos. *Rivera v. Insular Wire Products Corp.*, supra, pág. 924. En vista de su

carácter reparador, esta ley debe ser interpretada liberalmente a favor del empleado. (Cita omitida). *Ruiz v. Col. San Agustín*, 152 DPR 226, 232 (1998).

Por último, y atinente a la controversia ante nos, la Sección 15 del estatuto, 32 LPRA sec. 3132, prescribe que *[e]n todos los casos en que se dictare sentencia en favor de la parte querellante, si ésta compareciere representada por abogado particular, se condenará al querellado al pago de honorarios de abogado.*

**-B-**

La Ley Núm. 180-1998, *supra*, fue aprobada con el fin de crear una nueva Ley de Salario Mínimo y así establecer un mecanismo más ágil, a tono con el desarrollo en el área laboral, tanto a nivel estatal como federal. Véase, la Exposición de Motivos. 29 LPRA sec. 250 et seq.

El Artículo 9 de la Ley Núm. 180-1998, 29 LPRA 250i, establece el derecho de todo obrero o empleado a cobrar, mediante acción civil, el importe total de lo adeudado por el patrono, más una cantidad adicional. Específicamente, el inciso (a) del precipitado Artículo dispone lo siguiente:

> Todo obrero o empleado que por su trabajo reciba compensación inferior a la prescrita en esta Ley o en un convenio colectivo o en un contrato individual de trabajo tendrá derecho a cobrar mediante acción civil la diferencia adeudada hasta cubrir el importe total de la compensación que le corresponda, por concepto de salario, vacaciones, licencia por enfermedad o cualquier otro beneficio, más una cantidad igual a la que se le haya dejado de satisfacer, por concepto de compensación adicional, además de los costos, gastos, intereses y **honorarios de abogados** del procedimiento, sin que para nada de ello obste pacto en contrario. *Íd.* (Énfasis suplido).

Sin embargo, el Artículo 8 de la Ley Núm. 180-1998, 29 LPRA sec. 250f, provee una serie de excepciones a la aplicabilidad del estatuto, de manera que, las personas allí enumeradas no están cobijadas por sus disposiciones. Dicho Artículo establece que:

(a) Las disposiciones de esta Ley no serán aplicables a:

> (1) personas empleadas por el Gobierno de los Estados Unidos de América, por el Gobierno de Puerto Rico, con excepción de aquellas agencias o instrumentalidades de este que operen como negocios o empresas privadas, y;

(2) personas empleadas por los Gobiernos Municipales.

**(b) Las disposiciones de esta Ley no serán aplicables a los(as) "Administradores(as)", "Ejecutivos(as)" y "Profesionales", según dichos términos son definidos mediante el Reglamento Número 13 de la Junta de Salario Mínimo.**

(c) Las disposiciones de esta Ley no serán aplicables a empleados cubiertos por un convenio colectivo suscrito por una organización obrera y un patrono, siempre que su salario sea igual o mayor al establecido al amparo de las disposiciones de esta Ley. *Íd.* (Énfasis suplido).

A tenor con los poderes delegados, el Departamento del Trabajo y Recursos Humanos promulgó el Reglamento 7082, *supra*. El reglamento aludido se creó para definir aquellas clasificaciones ocupacionales exentas de las normas de salario mínimo y las referentes al pago de licencias por vacaciones y enfermedad. Art. III del Reglamento 7082, *supra*.

El Artículo V del Reglamento 7082, define "Administrador", en lo aquí pertinente, como todo empleado:

2. cuya función primordial sea el realizar trabajo de oficina o que no sea de naturaleza manual, directamente relacionado con la dirección o las operaciones generales del negocio del patrono o de los clientes del patrono; y
3. cuya función primordial incluya el ejercicio de discreción y juicio independiente con relación a asuntos de importancia. [...]

Por su parte, el Artículo VI del Reglamento, *supra*, define "Ejecutivo" como todo empleado *cuya función primordial sea la dirección de la empresa en que trabaja o de un departamento o de una subdivisión comúnmente reconocida de la empresa* y que, *usual y regularmente dirija el trabajo de, por lo menos, dos o más empleados de tiempo completo o su equivalente.*

La definición de "Profesional" queda comprendida en el Artículo VII del Reglamento, *supra*, como todo empleado que *requiera conocimientos avanzados, predominantemente intelectuales, y que incluya el constante ejercicio de discreción y juicio independiente.*

Por otro lado, Artículo VIII (C) del Reglamento, *supra*, define "Agentes Viajeros" y "Vendedores Ambulantes" como:

> Los Agentes Viajeros y Vendedores Ambulantes son aquellos empleados cuya función primordial es realizar ventas según definido por la FLSA y/o por la Ley Núm. 379, o aquellos empleados cuyo deber primordial sea obtener órdenes o contratos de servicios o para el uso de facilidades por lo cual el cliente o comprador pagará una consideración o remuneración; y que el empleado esté habitual y regularmente ocupado lejos del lugar de negocio de su patrono mientras realiza dichas funciones. Este empleado generalmente realiza sus ventas en el lugar de negocios o residencia de los clientes. Esta excepción no incluye ventas por teléfono, por correo o por el Internet, a menos de que las mismas sean resultado de una gestión personal de ventas. El requisito de una compensación mínima salarial (Artículo IX de este Reglamento) no es de aplicación para los empleados que sean considerados agentes viajeros o vendedores ambulantes bajo esta disposición.

Finalmente, para conocer el alcance de las excepciones bajo las disposiciones de la Ley Núm. 180-1998, el Artículo IV del Reglamento 7082, dispone que el nombre o título del empleado no es suficiente para establecer su estatus como empleado exento. Por tanto, el estatus del empleado deberá determinase a base de su salario y funciones, según establecidas en el Reglamento.

**-C-**

La Regla 44.1 (d) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1 (d), regula los honorarios de abogado, estableciendo lo siguiente:

> En caso de que cualquier parte o su abogado o abogada **haya procedido con temeridad o frivolidad**, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. [...] (Énfasis suplido).

Nuestra más alta Curia ha definido la temeridad como *una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y administración de la justicia. Fernández v. San Juan Cement Co. Inc.*, 118 DPR 713, 718 (1987).

Se entiende que un litigante actúa con temeridad cuando *por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. Andamios de P.R. v. Newport Bonding,* 179 DPR 503, 520 (2010).

La imposición de honorarios de abogado por temeridad busca establecer una penalidad al litigante perdidoso que instó un pleito frívolo y debido a ello fuerza a la otra parte a incurrir en gastos y trabajo innecesarios, o a la parte que extendió excesivamente un pleito ya incoado. Por consiguiente, ésta busca disuadir la litigación innecesaria. *ELA v. Ojo de Agua Development, Inc.*, 205 DPR 502 (2020). El requisito de la existencia de una actuación temeraria hace que la Regla 44.1 de las de Procedimiento Civil, *supra*, tenga el propósito de penalizar o sancionar a la parte que incurre en la conducta proscrita por dicha regla. *Íd.* No obstante, el Tribunal Supremo ha relevado del pago de honorarios de abogado a litigantes que pierden un pleito donde hubo controversias fácticas reales que requerían el examen de la prueba testifical y documental. *Santos Bermúdez v. Texaco P.R., Inc.*, 123 DPR 351, 357-358 (1989).

La evaluación de si ha mediado o no temeridad recae sobre la discreción sana del tribunal sentenciador y solo se intervendrá con ella en casos en que ese foro haya abusado de tal facultad. *S.L.G. Flores–Jiménez v. Colberg*, 173 DPR 843, 866 (2008). Los tribunales apelativos no deben intervenir con el ejercicio de esa discreción, salvo que se demuestre que hubo un craso abuso de discreción; que el foro recurrido actuó con prejuicio o parcialidad; que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, o cuando la cuantía impuesta sea excesiva. *P.R. Oil v. Dayco*, 164 DPR 486, 511 (2005).

### III.

En el presente caso, la parte apelante solicita que revoquemos la *Sentencia* emitida el 7 de febrero de 2024, mediante la cual el TPI: (1) determinó que la señora Román Cintrón era una agente viajera, según definido bajo el Reglamento 7082; (2) convirtió el procedimiento a ordinario por no ser de aplicación las disposiciones de la Ley Núm. 180-1998, y; (3) ordenó a IKON el pago de $4,658.09 por concepto de

comisiones, más intereses legales hasta su pago final a razón de 9.5% anual. El Tribunal determinó que las funciones de la señora Román Cintrón eran compatibles con la definición de "Agente Viajero" y "Vendedor Ambulante" contenida en el Reglamento 7082, *supra*. A su vez, concluyó que los agentes viajeros eran una categoría exenta de la aplicación de la Ley Núm. 180-1998. Por tal razón, convirtió el procedimiento a ordinario, por no ser de aplicación la Ley Núm. 2-1961, *supra.*

La parte apelante señala un total de cuatro (4) señalamientos de error. En síntesis, sostiene que erró el TPI al determinar que no le eran de aplicación las disposiciones de la Ley Núm. 180-1998 por caer bajo la categoría de "Agentes Viajeros y Vendedores Ambulantes". Sobre esto, señala que el Artículo 8 del estatuto no excluye a los empleados que se desempeñan como vendedores.

Asimismo, señala que erró el TPI al no imponerle a la parte apelada el pago de honorarios de abogado. Arguye que procedía la imposición de honorarios de abogado al amparo de la Sección 15 de la Ley Núm. 2-1961 y del Artículo 11 de la Ley Núm. 180-1998, o en la alternativa, por la alegada temeridad en la que incurrió el apelado. La señora Román Cintrón argumenta que IKON fue temerario al haber negado en su *Contestación a Querella* que no se le adeudaban comisiones a la apelante y que, según una investigación realizada por estos, la apelante tenía un crédito por comisiones pagadas en exceso.

Por su parte, IKON sostiene que procede la desestimación del recurso por falta de jurisdicción, ya que el procedimiento fue celebrado como uno sumario y, por ende, la apelante tenía un término de diez (10) días para presentar su *Apelación.* Además, arguye que los "Agentes Viajeros" o "Vendedores Ambulantes" no están cobijados por las disposiciones de la Ley Núm. 180-1998, *supra.* Además, señala que no incurrió en temeridad alguna y que la controversia ante el TPI era sobre

una confusión respecto a la fórmula adecuada para el cálculo de las comisiones de la señora Román Cintrón.

Como Tribunal Apelativo, en primer lugar, estamos obligados a examinar si tenemos jurisdicción para atender el recurso presentado. Ciertamente, los procedimientos fueron celebrados al amparo del procedimiento sumario que concede la Ley Núm. 2-1961, *supra*. No obstante, el foro apelado convirtió el procedimiento a ordinario mediante *Sentencia*. Convertido el procedimiento a ordinario por el TPI, la señora Román Cintrón tenía un término de treinta (30) días para acudir mediante apelación ante esta Curia, conforme dispone la Regla 13 de nuestro Reglamento. Por todo lo cual, el recurso fue presentado dentro de término. No procede la desestimación por falta de jurisdicción solicitada por la parte apelada.

Ahora bien, sobre la aplicación de la Ley Núm. 180-1998, debemos destacar que el Artículo 8 del estatuto, *supra*, expresamente excluye de su aplicación a los "Administradores", "Ejecutivos" y "Profesionales". No obstante, el Reglamento 7082, atinente a la controversia, añadió las categorías de "Agentes Viajeros" o "Vendedores Ambulantes".

Como ya discutimos, el Reglamento 7082 fue creado con la intención de definir las categorías exentas de las normas de salario mínimo y las referentes al pago de licencias por vacaciones y enfermedad de las leyes laborales.

Ahora bien, debemos determinar si, de acuerdo con sus funciones, la señora Román Cintrón se encuentra bajo la categoría exenta de "Vendedores Ambulantes". Al examinar las funciones realizadas por la señora Román Cintrón, es evidente que las mismas son compatibles con la definición de "Agente Viajero" y "Vendedor Ambulante". Particularmente, de las determinaciones realizadas por el foro apelado, surge que:

> Del testimonio de la Querellante, Dinorah Román Cintrón, surge que es una agente de seguros, que coordina las presentaciones y acude a las facilidades u oficinas de los

clientes potenciales para realizar sus ventas. La señora Román realiza las ventas fuera de las oficinas de su patrono, IKON. Tampoco registra su asistencia diariamente o acudía a diario a las oficinas de IKON, o estaba obligada a asistir y tenía total control de como dividía su tiempo y las horas que dedicaba a trabajar diariamente. La querellante es una empleada exenta de IKON.

Por lo tanto, no erró el foro primario al concluir, que, según las funciones de la apelante, el puesto de "Client Manager" o agente de seguros se encontraba bajo la categoría ocupacional de vendedores ambulantes o agentes viajeros.

Por otro lado, en cuanto a la imposición de honorarios de abogado, es menester señalar que, resuelta la inaplicabilidad de la Ley Núm. 2-1961 y Ley Núm. 180-1998, no procede la concesión de honorarios bajo las disposiciones de los referidos estatutos.

Sin embargo, la parte apelante también sostiene que la parte apelada incurrió en temeridad, por lo que procedía la imposición de honorarios de abogado, a tenor con la Regla 44.1 de Procedimiento Civil, *supra*.

Nuestro más alto foro ha expresado que una parte incurre en temeridad cuando *por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente a asumir las molestias, gastos, trabajo e inconveniencias de un pleito.* Andamios de P.R. v. Newport Bonding, *supra*.

A su vez, el Tribunal Supremo ha relevado del pago de honorarios de abogado a litigantes que pierden un pleito donde hubo controversias fácticas reales que requerían el examen de la prueba testifical y documental. Santos Bermúdez v. Texaco P.R., Inc., *supra*.

Examinados los autos originales, no surge que IKON haya incurrido en temeridad durante los procedimientos. El hecho de haber expuesto en la *Contestación a Querella* que, luego de haber calculado las comisiones presuntamente adeudadas a la señora Román Cintrón, a esta le había sido otorgada un crédito en exceso no es suficiente para imponer honorarios por temeridad. Surge del expediente que existía una

controversia fáctica sobre la fórmula acordada por las partes para el cálculo de dichas comisiones. No incurrió en error el TPI al no imponerle a IKON el pago de honorarios de abogado al amparo de la Ley Núm. 180-1998 y Ley Núm. 2-1961 o al amparo de la Regla 44.1 de Procedimiento Civil.

**IV.**

Por los fundamentos antes expuestos, se *Confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones